894 So.2d 842 (2005)
James Delano WINKLES, Appellant,
v.
STATE of Florida, Appellee.
No. SC03-935.
Supreme Court of Florida.
January 13, 2005.
*843 James Marion Moorman, Public Defender and Paul C. Helm, Assistant Public Defender, Tenth Judicial Circuit, Bartow, FL, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL and Carol M. Dittmar, Assistant Attorney General, Tampa, FL, for Appellee.
PER CURIAM.
Appellant James Delano Winkles challenges the constitutionality of his convictions and death sentences imposed on each of two counts of first-degree murder. We have jurisdiction, see art. V, § 3(b)(1), Fla. Const. For the following reasons, we affirm Winkles's convictions and sentences.

Factual and Procedural History
This case originates from two abductions that occurred more than twenty years ago. First, on September 9, 1980, having identified an employee of a dog grooming business as his victim, appellant arranged as a ruse for a groomer to come to a vacant house. When a different groomer arrived, the 19-year-old Elizabeth Graham, appellant decided she was sufficiently sexually exciting for his plan. Abducting her at gunpoint, Winkles handcuffed, gagged, and blindfolded her, and put her in his vehicle. He drove Graham to his grandmother's house, where he instilled fear in her by *844 handcuffing her hands and feet and firing several .25 caliber rounds into the floor. He raped Elizabeth multiple times over several days. Finally, after he realized that she knew her location (from his grandmother's magazines), he decided he had to kill her. He drugged her, and when she fell asleep, opened an umbrella over her head to catch the spatter and shot her three times in the head. Winkles burned her clothes and buried her somewhere in Pinellas County.[1] He returned two weeks later, however, fearing someone would discover and identify the body. He removed her head and took it to the Steinhatchee River (in Lafayette County), where he removed the teeth and the lower mandible. Winkles ran water through the skull to be sure no spent bullets remained inside and threw the skull into the river. The skull was discovered in July 1981, and subsequent DNA testing revealed the skull to be Elizabeth Graham's. For many years, Elizabeth's murder remained unsolved.
About a year later, in October 1981, appellant chose Margo Delimon for abduction when he visited a model home where Delimon was the realtor. He asked her out for a drink, which she refused. The next day, however, he arrived at the model home early and asked Delimon out to breakfast, and she agreed. Afterwards, Margo agreed to see some property with appellant. He instead abducted her, handcuffing her and taking her to a vacant house next door to his grandmother's. As in the earlier case, he raped the victim repeatedly over the next several days. On the morning of the fourth day, he realized he had to kill her because she could identify him and the house. He killed her with an overdose of sleeping pills, burned her clothes, and buried her in Pinellas County. About two weeks later, he moved the body to Citrus County. A week after that he dug up her head, removed the teeth, and deposited the skull in Hernando County near an area where his family camped.
The murders of Graham and Delimon remained unsolved until 1998 when appellant, a suspect in the cases then serving a prison sentence, contacted authorities claiming to have information. Stating that he was having nightmares about the murders, over the ensuing months he confessed in detail to kidnapping and murdering the two women. He also provided specific information about the women's personal lives and the location and condition of the victims' remains. He took detectives to the exact location where Delimon's body had been found (Delimon's skull previously had been found exactly where appellant said he disposed of it). Winkles also gave several detailed, videotaped interviews about the murders to a local news channel. Finally, on March 25, 1999, appellant was indicted for the premeditated murders of both women.
Appellant filed a pretrial motion contending that Florida's capital sentencing statute was unconstitutional. The court denied the motion. Preserving the issue for appeal, Winkles pled guilty to the murder charges and waived his right to a jury for the penalty phase of the trial. At the plea hearing, the State was prepared to prove appellant committed the crimes through Winkles's confession and other corroborating evidence, including testimony by Donna Maltby, whom he similarly kidnapped in 1982, but who managed to escape. He was serving a life sentence for this crime[2] when he confessed to the Graham and Delimon murders.
*845 The evidence would have shown that appellant always planned his abductions by identifying a victim, preparing his vehicle by disabling the passenger-side door so that a passenger could not open the door or lower the window, and having handy his "abduction kit" (containing pre-cut lengths of rope, handcuffs, "gags" (fishing bobber corks covered in glass shards or containing razor blades), sleeping pills, bottles of liquor, and Vicks Vaporub to put under his nose to prevent his smelling decaying bodies). He also kept a case containing women's undergarments.
Following the penalty phase as to which appellant waived his right to a jury, the trial court sentenced appellant to death on both counts. As to both counts, the court found the following four aggravating circumstances to be proven beyond a reasonable doubt and ascribed great weight to each: (1) prior conviction of a capital felony or a violent felony (supported in each count by the murder of the other woman, the kidnapping, armed robbery, and aggravated assault convictions resulting from the 1982 Maltby abduction, and 1963 convictions for assault and attempted robbery); (2) murder committed in the course of a kidnapping; (3) murder committed to avoid or prevent lawful arrest; and (4) murder committed in a cold, calculated, and premeditated manner (CCP).
No evidence of statutory mitigating factors was presented, and the court found none in the record. The court considered the following nonstatutory mitigating circumstances, ascribing to each the weight indicated: (1) cooperation with law enforcement by confessing and providing information regarding two unsolved crimes (considerable weight); (2) consecutive life sentences would result in appellant dying in prison (little weight); (3) life sentences would result in no appeals or collateral attacks and save taxpayers money (no weight); (4) by pleading guilty, appellant waived several appellate issues (very little weight); (5) appellant spared victims' families the pain of trial and saved the State the expense of trial (no weight); (6) by confessing, appellant provided victims' families with closure (little weight); (7) appellant used his twenty years' incarceration positively (no weight); (8) appellant was raised by relatives because of his mother's untimely death (not considered because not proven); (9) appellant served in the military (no weight). The court concluded that the aggravating circumstances far outweighed the mitigating circumstances and that the sentence was not disproportionate in comparison to other Florida death penalty cases.

The Constitutional Issues
Winkles argues that Florida's death penalty statute is unconstitutional on two grounds: (1) contrary to the statute, the Supreme Court's decisions in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), require that a jury must find the aggravating circumstances necessary to impose the death penalty; and (2) the statute does not require that aggravating circumstances be charged in the indictment. We address each claim in turn.
First, Winkles contends that under Apprendi and Ring, a jury must find the aggravating circumstances required to impose the death penalty.[3] In Apprendi the *846 United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. In Ring, the Court applied this rule to death penalty cases, holding that "[c]apital defendants, no less than noncapital defendants ... are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." Ring, 536 U.S. at 589, 122 S.Ct. 2428.
As appellant admits, at least in cases, such as this one, that include a prior violent felony conviction as an aggravating circumstance, this Court has repeatedly rejected the argument that Apprendi and Ring require the jury, rather than the judge, to find the remaining aggravators. See, e.g., Duest v. State, 855 So.2d 33, 49 (Fla.2003) ("We have previously rejected claims under Apprendi and Ring in cases involving the aggravating factor of a previous conviction of a felony involving violence."), cert. denied, 541 U.S. 993, 124 S.Ct. 2023, 158 L.Ed.2d 500 (2004); Kormondy v. State, 845 So.2d 41, 54 (Fla.) ("Ring does not require either notice of the aggravating factors that the State will present at sentencing or a special verdict form indicating the aggravating factors found by the jury."), cert. denied, 540 U.S. 950, 124 S.Ct. 392, 157 L.Ed.2d 283 (2003). Accordingly, we affirm the trial court's denial of relief on this issue.
Second, Winkles contends that Florida's death penalty statute is unconstitutional because it does not require that aggravating circumstances be charged in the indictment. Again, this Court has regularly rejected such claims where, as here, one of the aggravators is a prior violent felony conviction. For example, in Doorbal v. State, 837 So.2d 940, 963 (Fla.), cert. denied, 539 U.S. 962, 123 S.Ct. 2647, 156 L.Ed.2d 663 (2003), we rejected this same claim, concluding that
one of the aggravating circumstances found by the trial judge to support the sentences of death was that Doorbal had been convicted of a prior violent felony, namely the contemporaneous murders of Griga and Furton, and the kidnapping, robbery, and attempted murder of Schiller. Because these felonies were charged by indictment, and a jury unanimously found Doorbal guilty of them, the prior violent felony aggravator alone satisfies the mandates of the United States and Florida Constitutions, and therefore, imposition of the death penalty was constitutional.
Accord Blackwelder v. State, 851 So.2d 650, 654 (Fla.2003) (rejecting claim that aggravating circumstances must be alleged in indictment); see also Lynch v. State, 841 So.2d 362, 378 (Fla.) (rejecting a claim that Florida's death penalty statute is unconstitutional because it does not require notice of aggravating circumstances), cert. denied, 540 U.S. 867, 124 S.Ct. 189, 157 L.Ed.2d 123 (2003). As we have said before, "[t]he aggravating factors to be considered in determining the propriety of a death sentence are limited to those set out in [the statute]. Therefore, there is no reason to require the State to notify defendants of the aggravating factors that it intends to prove." Vining v. State, 637 So.2d 921, 927 (Fla.1994). The trial court in this case found, and we agree, that each murder charged in the indictment to which Winkles pled guilty constituted a prior violent felony conviction as to the other murder conviction. See Pardo v. State, 563 So.2d 77, 80 (Fla.1990) ("We have consistently held that the contemporaneous conviction *847 of a violent felony may qualify as an aggravating circumstance, so long as the two crimes involved multiple victims or separate episodes."). The prior violent felony aggravator also was supported by appellant's 1982 convictions for kidnapping, armed robbery, and aggravated assault and his 1963 convictions for assault and attempted robbery. Accordingly, we affirm the court's denial of Winkles's motion on this issue as well.

Competent, Substantial Evidence Review
This Court is obligated to review the record of a death penalty case to determine whether the evidence is sufficient to support the murder conviction. See Fla. R.App. P. 9.140(i); Davis v. State, 859 So.2d 465, 480 (Fla.2003). However, "[w]hen a defendant has pled guilty to the charges resulting in a penalty of death, this Court's review shifts to the knowing, intelligent, and voluntary nature of that plea." Lynch v. State, 841 So.2d 362, 375 (Fla.2003); see Koenig v. State, 597 So.2d 256, 257 n. 2 (Fla.1992) (stating that where a death-sentenced defendant pled guilty, "[i]n order to review the judgment of conviction ..., we must review the propriety of [the defendant's] plea, since it is the plea which formed the basis for his conviction"). "Proper review requires this Court to scrutinize the plea to ensure that the defendant was made aware of the consequences of his plea, was apprised of the constitutional rights he was waiving, and pled guilty voluntarily." Ocha v. State, 826 So.2d 956, 965 (Fla.2002).
In this case, our review of the plea colloquy amply satisfies us that the trial court thoroughly informed appellant about the rights he was waiving and appellant indicated both verbally and in writing that he understood. Specifically, the court explained that appellant was entitled to a jury in both phases of the trial, that if he elected to waive his right to a jury, the judge alone would determine his sentence, and that the only sentencing options were life or death. Appellant stated that he understood the ramifications of his plea, that he was not being threatened or coerced, and that he was not on any medication that would impair his understanding of his decision. He does not contend otherwise in this appeal. Accordingly, we hold that he knowingly and voluntarily entered his plea, and the trial court properly accepted it.

Proportionality Review
This Court also has the duty to conduct a proportionality review of a death sentence because of the uniqueness of this punishment. See Ocha v. State, 826 So.2d 956, 965 (Fla.2002). The Court conducts a qualitative review of the totality of the circumstances of the case and compares the case with other capital cases. In this case, the court properly found four aggravating factors: (1) appellant's prior violent felony convictions; (2) the murder was cold, calculated, and premeditated (CCP); (3) the murder was committed to avoid arrest; and (4) the murder was committed in the course of a kidnapping. Each factor was accorded great weight. Appellant's prior convictions are particularly weighty here because as to each victim, they include his murder of the other victim, his 1982 convictions for the kidnapping, armed robbery, and aggravated assault, and his 1963 convictions for attempted robbery and assault with intent to commit robbery. Further, the CCP aggravator is one of the most serious of the statutory aggravators. Larkins v. State, 739 So.2d 90, 95 (Fla.1999). The latter three aggravators are clearly supported by appellant's own statements admitting the kidnappings, the reasons for his decisions to murder the women, his plans for the murders, and his *848 methodical execution of those plans. The trial court found no statutory and only four nonstatutory mitigating factors, of which only one  appellant's cooperation with law enforcement  was ascribed "considerable weight." Little weight was given to appellant's having provided closure to the victims' families by confessing and that appellant would die in prison under a life sentence, and very little weight was ascribed to appellant's waiver of appellate issues. Further, no evidence was presented of any mental health or substance abuse problems. Accordingly, as the trial court found, the aggravating factors far outweigh any of the mitigating circumstances.
Finally, in comparison to other cases, these homicides are certainly among the most aggravated and least mitigated of first-degree murder cases. See Lawrence v. State, 846 So.2d 440, 454-55 (Fla.) (affirming death sentence where the defendant confessed, the aggravators found were prior violent felony convictions (two murders) and CCP, five statutory mitigators were found, including both statutory mental factors, four nonstatutory factors were found, and the codefendant was the actual killer), cert. denied, 540 U.S. 952, 124 S.Ct. 394, 157 L.Ed.2d 286 (2003); Smithers v. State, 826 So.2d 916, 931 (Fla.2002) (affirming both death sentences where the aggravators of prior violent felony conviction and heinous, atrocious, or cruel were found as to both and CCP as to one murder, and the mitigation included both mental mitigators, childhood abuse, and positive character traits), cert. denied, 537 U.S. 1203, 123 S.Ct. 1275, 154 L.Ed.2d 1045 (2003).

Conclusion
For the foregoing reasons, we affirm Winkles's conviction of first-degree murder and sentence of death on both murder charges.
It is so ordered.
PARIENTE, C.J., and WELLS, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., concurring in part and dissenting in part.
I concur in those portions of the opinion considering the sufficiency of the evidence, and our review to determine proportionality of the death sentences imposed herein; I dissent, however, from the majority's discussion and resolution of the constitutional issues. See Bottoson v. Moore, 833 So.2d 693, 703 (Fla.2002) (Anstead, C.J., concurring in result only).
In Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the U.S. Supreme Court invalidated the sentencing provisions of the Arizona death penalty scheme because those provisions did not provide for jury findings as to the aggravating circumstances that must be established to impose the death penalty. While a majority of this Court has consistently rejected the notion that Florida's death penalty scheme has the same flaw as the Supreme Court found in Arizona's scheme, I must again point out the U.S. Supreme Court's contrary conclusion as set out in Walton v. Arizona, 497 U.S. 639, 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), when the court declared:
The distinctions Walton attempts to draw between the Florida and Arizona statutory schemes are not persuasive. It is true that in Florida the jury recommends a sentence, but it does not make specific factual findings with regard to the existence of mitigating or aggravating circumstances and its recommendation *849 is not binding on the trial judge. A Florida trial court no more has the assistance of a jury's findings of fact with respect to sentencing issues than does a trial judge in Arizona.

Of course, the U.S. Supreme Court has not yet expressly ruled on the impact of Ring on Florida law, although I acknowledge that it has denied review of a number of cases involving that very issue. In the meantime, however, because I find, like the U.S. Supreme Court in Walton, that Florida law delegates sole responsibility to trial judges rather than juries for fact-finding as to aggravating circumstances, I cannot agree with my colleagues' rejection of Ring.
NOTES
[1] Her body never was recovered.
[2] Appellant was convicted of kidnapping (life sentence), armed robbery (90 years), and aggravated assault (10 years' probation, consecutive to the life sentence) on May 27, 1982.
[3] Winkles based his argument before the trial court on Apprendi and Ring, even though the latter case had not been decided when Winkles raised his claim. Certiorari, however, had been granted. See Ring v. Arizona, 534 U.S. 1103, 1103, 122 S.Ct. 865, 151 L.Ed.2d 738 (2002).