PER CURIAM.
 

 This case is before the Court on appeal from a judgment of conviction of first-degree murder and a sentence of death. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(1), Fla. Const. For the following reasons, we affirm Pham’s conviction and sentence.
 

 
 *491
 

 Overview
 

 On March 7, 2008, Tai Pham (Pham) was convicted in Seminole County for the first-degree murder of his estranged wife Phi Pham (Phi), the attempted first-degree murder of her boyfriend Christopher Higgins (Higgins), the armed kidnapping of his stepdaughter Lana Pham (Lana), and armed burglary. Pham entered Phi’s apartment where her oldest daughter, his stepdaughter Lana, was alone and awaiting Phi’s return. After binding Lana, Pham hid in her bedroom for an hour, then stabbed Phi at least six times as she entered the room. Prior to returning to the apartment, Phi and Higgins were together at a party and returned in different vehicles. Phi’s stabbing occurred while Higgins secured his motorcycle outside. Once Higgins entered the apartment, he struggled with Pham. During the struggle, Lana was able to get free and call the police. Higgins was severely injured during the struggle, but was able to subdue Pham until the police arrived. Both Lana and Higgins testified at trial. Pham was the sole witness for the defense. On May 22, 2008, the jury, by a vote of ten to two, recommended the death penalty after the penalty phase. After the
 
 Spencer
 

 [1]
 

 hearing held on November 14, 2008, the trial court found the aggravators
 
 [2]
 
 outweighed the mitigation
 
 [3]
 
 and entered a sentence of death. This is Pham’s direct appeal.
 

 On appeal, Pham raises seven issues: (1) that the prosecutor’s improper statements during closing arguments entitle him to a new trial, (2) that juror misconduct entitles him to a new penalty phase, (8) that the trial court erred in finding the prior violent felony aggravator, (4) that his death sentence is unconstitutional because the aggravating circumstances were not alleged in the charging document, (5) that the trial court erred in finding the murder was heinous, atrocious, or cruel (HAC), (6) that the trial court erred in finding the murder cold, calculated, and premeditated (CCP), and (7) that his death sentence is not proportionate. Additionally, we review the sufficiency of the evidence to support Pham’s conviction.
 

 
 *492
 

 Discussion
 

 Pham raises seven issues on appeal. In addition, although the issue is not raised by Pham, we are required to review the sufficiency of the evidence to uphold Pham’s conviction. Because we find them to be without merit, we deny each of Pham’s claims on appeal. Additionally, we find that the evidence presented below is sufficient to support Pham’s conviction.
 

 Prosecutorial Misconduct
 

 Pham alleges that the State made two improper arguments that entitle him to a new trial. Contemporaneous objections were made to both statements, and, accordingly, they have been properly preserved for review. Because the prosecutor’s comments were a reasonable summary of the evidence presented at trial, we deny relief on this claim.
 

 The first portion of the argument to which Pham objects states:
 

 MR. STONE: But I just do want to quickly address the Defendant’s testimony-
 

 And, you know, in a nutshell, the way that you can describe the Defendant’s testimony is a desperate man telling a desperate story. That’s exactly what it is.
 

 I won’t spend more than a few moments on the Defendant’s testimony because that’s all it deserves, if that much, but there are a few points that I do want to make. And
 
 some of the things that he said are just nonsensical, that just don’t make sense.
 

 The second portion of the argument to which Pham objects states:
 

 MR. STONE: You know, Mr. Pham testified,
 
 the Defense chose to present a case in this case, they chose to present evidence, and still they have not provided an explanation
 
 as—
 

 The law is well-settled that “[w]ide latitude is permitted in arguing to a jury.”
 
 Breed-love v. State,
 
 413 So.2d 1, 8 (Fla.1982). Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments.
 
 Thomas v. State,
 
 748 So.2d 970, 984 (Fla.1999). “It is within the judge’s discretion to control the comments made to a jury, and [this Court] will not interfere unless an abuse of discretion is shown.”
 
 Moore v. State,
 
 701 So.2d 545, 551 (Fla.1997).
 

 The State asserts that the prosecution’s comments were a fair and accurate description of the evidence presented to the jury. We agree. Pham’s testimony regarding Phi’s death was that he was not sure how she’d been stabbed but that he never stabbed her. Further, Pham testified that his teenaged step-daughter consented to being tied and bound even after arguing with him over his dismissal of her friends who had attempted to visit. Accordingly, we deny relief on this claim.
 

 Juror Misconduct
 

 Next, Pham alleges that the jurors prejudged him and began deliberations prior to receiving instructions. The crux of Pham’s claim is that his Vietnamese nationality figured prominently in the penalty phase and that the jury was prematurely disinclined to accept Pham’s nationality and upbringing as mitigation. Because it is not apparent on the record that the comments affected the verdict or sentence recommendation in any way, the trial court did not abuse its discretion in denying Pham’s motion for a new penalty phase and we deny Pham’s claim.
 

 An alternate juror, Valenti,
 
 [4]
 
 brought these allegations to the trial court’s atten
 
 *493
 
 tion. Valenti wrote a letter stating that he had overheard jurors making inappropriate statements. Based on the information contained in the letter, the trial court interviewed Valenti and two other jurors.
 

 Juror Kristen Appleman stated that she heard a comment in passing: “I think just the comment of, you know yes, everyone had a rough life in some case, but you are — this is the law, this is — there is right and wrong, and, you know, if you wanted to come to America, you have to live by American standards, American Law.” Ap-pleman stated that the comment was made in passing and not directed at anyone — it was not a conversation. She further stated that she did not “get the sense that anyone ha[d] their mind made up or would not listen to a certain piece of information and take it in consideration.”
 

 Juror Peter Perkins stated that he heard idle chitchat about people having tough luck, but that he did not know who said it. Perkins stated that the comments were made walking down the hallways, but not in the jury room.
 

 The trial court reserved ruling on the defense’s motion for mistrial, but reminded the jury not to form any definite or fixed opinion on the merits of the case until all evidence had been presented. The court ultimately denied the motion. While we strongly discourage jurors from this sort of behavior, indeed any discussion of the case or parties at all prior to deliberations, we do not find that these comments rise to the level of ethnic bias.
 

 The Court has addressed the issue of juror misconduct and a court’s power to discharge the jury and declare a mistrial:
 

 “It has been long established and continuously adhered to that the power to declare a mistrial and discharge the jury should be exercised with great care and caution and should be done only in cases of absolute necessity.”
 
 Thomas v. State,
 
 748 So.2d 970, 980 (Fla.1999) (citing
 
 Salvatore v. State,
 
 366 So.2d 745, 750 (Fla.1978)). Moreover, addressing allegations of juror misconduct is left to the sound discretion of the trial judge.
 
 Doyle v. State,
 
 460 So.2d 353, 357 (Fla.1984).
 

 England v. State,
 
 940 So.2d 389, 402 (Fla.2006). Specifically, with respect to a motion for mistrial, the Court has noted:
 

 A motion for a mistrial should only be granted when an error is so prejudicial as to vitiate the entire trial.
 
 Snipes v. State,
 
 733 So.2d 1000, 1005 (Fla.1999). A trial court’s ruling on a motion for mistrial is subject to an abuse of discretion standard of review.
 
 Perez v. State,
 
 919 So.2d 347 (Fla.2005), ce
 
 rt. denied,
 
 547 U.S. 1182, 126 S.Ct. 2359, 165 L.Ed.2d 285 (2006).
 

 England,
 
 940 So.2d at 401-02.
 

 Seibert v. State,
 
 64 So.3d 67 (Fla.2010).
 

 Any inquiry into juror misconduct must be limited to objective demonstration of overt acts committed by or in the presence of the jury or jurors which reasonably could have affected the verdict.
 
 Powell [v. Allstate Ins.
 
 Co.], 652 So.2d [354,] 356 [ (Fla.1995) ];
 
 [Baptist Hospital of Miami, Inc. v.]; Maler,
 
 579 So.2d [97,] 101 [ (Fla.1991) ];
 
 State v. Hamilton,
 
 574 So.2d 124, 128-29 (Fla.1991).
 

 Wilding v. State,
 
 674 So.2d 114, 117-118 (Fla.1996),
 
 receded from in part by Devoney v. State,
 
 717 So.2d 501, 505 (Fla.1998) (“We recede from that portion of
 
 Wilding
 
 which says that, while the jurors’ subjective beliefs inhere in the verdict, any discussion of them can become an overt act of misconduct.”).
 

 If the [misconduct is] such that [it] would probably influence the jury, and the evidence in the cause is conflicting,
 
 *494
 
 the onus is not on the accused to show he was prejudiced for the law presumes he was. But it should be clearly understood that not all [misconduct] will vitiate a verdict, even though such conduct may be improper. It is necessary either to show that prejudice resulted or that the [misconduct was] of such character as to raise a presumption of prejudice.
 

 Amazon v. State,
 
 487 So.2d 8, 11 (Fla.1986) (alterations in original) (quoting
 
 Russ v. State,
 
 95 So.2d 594, 600-01 (Fla.1957)).
 

 Pham’s argument here is basically one of ethnic bias — that some jurors were not willing to accept his mitigation based on his upbringing and societal differences in Vietnam. While we continue to condemn ethnic bias in jurors, the comments here did not rise to the level of ethnic bias. As determined by the trial court, the statements made were not open appeals to the bias in others. Therefore, the trial court correctly denied Pham’s request for a new penalty phase. Accordingly, we deny Pham’s claim.
 

 Prior Violent Felony
 

 Pham alleges that it was error to permit the State to present testimony of the alleged victim of the battery on a law enforcement officer over objection at the
 
 Spencer
 
 hearing. Pham does not argue that the finding of the prior violent felony aggravator is improper because his conviction for aggravated battery on a law enforcement officer did not precede the penalty phase below. Instead, it appears that Pham is arguing that the application of this aggravator violates
 
 Apprend
 

 [5]
 

 and Ring
 
 [6]
 
 because the crime has to be one involving the use of threat or violence and that this Court has held that battery on a law enforcement officer is not a “forcible felony” that can be used to enhance a subsequent felony.
 
 State v. Hearns,
 
 961 So.2d 211 (Fla.2007). Thus, Pham argues his mere conviction was not enough to find this aggravator because the trial court had to consider extrinsic evidence that was not presented to the jury. As stated in the sentencing order, the evidence to support this aggravator that was considered by the trial court was as follows:
 

 On March 7, 2008, [Pham] was found guilty by the jury of the Attempted First Degree Murder of Christopher Higgins. This conviction was contemporaneous to his conviction for the First Degree Murder of Phi Pham in this case.
 

 At the
 
 Spencer
 
 hearing, the State introduced additional evidence in support of this aggravator by way of the [Pham’s] conviction on August 12, 2008, for Battery on a Law Enforcement Officer in Seminole County, Florida in Case No. 06^4879-CFA. Testimony of retired deputy Oleander Csisko, the victim, was also presented as to the events of October 12, 2006, which resulted in that conviction. Csisko testified that as [Pham] was being removed from the courtroom during a hearing in juvenile court, he stopped suddenly, and then became aggressive and combative. While Mr. Pham was hitting and kicking another deputy, Csisko grabbed his belly chains in an effort to regain control and escort him from the courtroom. She testified that [Pham] bent her fingers all the way back which resulted in pain and swelling. Subsequent medical examinations revealed a fracture to her arm.
 

 The Judgment and Sentence, in Case No. 06-4879-CFA, paired with the testimony of the victim, proves [that Pham]
 
 *495
 
 has one prior conviction
 
 [n.2]
 
 for a crime involving the use of violence and one contemporaneous conviction, for the attempted first degree murder of Christopher Higgins.
 

 This aggravating factor has been proven beyond a reasonable doubt and is given great weight.
 

 The trial court did not err in finding this aggravator.
 

 During a penalty phase proceeding, the trial court has the discretion to admit evidence with regard to the details of a defendant’s previous conviction for a felony involving the use or threat of violence.
 
 See
 
 § 921.141(1), (5)(b), Fla. Stat. (2006);
 
 Rhodes v. State,
 
 547 So.2d 1201, 1204 (Fla.1989);
 
 Tompkins v. State,
 
 502 So.2d 415, 419 (Fla.1986). This Court reviews the admission or exclusion of evidence for an abuse of discretion.
 
 See San Martin v. State,
 
 717 So.2d 462, 470-71 (Fla.1998).
 

 ... This Court has repeatedly held that the State is not restricted to the bare admission of a conviction when presenting evidence in support of the prior violent felony aggravating circumstance.
 
 See Rhodes,
 
 547 So.2d at 1204;
 
 Delap v. State,
 
 440 So.2d 1242, 1255-56 (Fla. 1983);
 
 Elledge v. State,
 
 346 So.2d 998, 1001-02 (Fla.1977). Rather, the State may adduce any testimony that the trial court deems relevant to the nature of the crime and the character of the defendant.
 
 See
 
 § 921.141(1), Fla. Stat. (2006);
 
 Delap,
 
 440 So.2d at 1255. “Whether a crime constitutes a prior violent felony is determined by the surrounding facts and circumstances of the prior crime.”
 
 Anderson v. State,
 
 841 So.2d 390, 407 (Fla.2003) (holding that trial court did not err in admitting testimony that demonstrated the defendant’s conviction for attempted sexual battery was actually a completed sexual battery).
 

 Miller v. State,
 
 42 So.3d 204, 225 (Fla. 2010).
 

 Florida law is well settled that contemporaneous convictions, like the conviction for the attempted murder of Christopher Higgins, establish the prior violent felony aggravator.
 
 See LeCroy v. State,
 
 533 So.2d 750 (Fla.1988);
 
 King v. State,
 
 390 So.2d 315 (Fla.1980). Because that is the law (and because Pham has not chal lenged this aspect of Florida law), this claim is without merit. The prior violent felony aggravator is established by virtue of the attempted murder conviction irrespective of the battery on a law enforcement officer conviction. Pham has not challenged the Higgins conviction and has waived any challenge to its application in aggravation. Accordingly, Pham has not provided a basis for relief on this claim.
 

 Constitutionality
 

 In this claim, Pham alleges that his death sentence is invalid because the trial court exceeded its authority in violation of
 
 Blakely v. Washington,
 
 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Specifically, Pham contends that first-degree murder is not punishable by death because imposition of capital punishment requires that additional findings of fact be made after a defendant is convicted of premeditated murder, which is in violation of
 
 Ring
 
 and
 
 Apprendi.
 

 This Court has repeatedly held that where a death sentence is supported by the prior violent felony aggravating circumstance, Florida’s capital sentencing
 
 *496
 
 scheme does not violate
 
 Ring
 
 or
 
 Apprendi. See, e.g., Frances v. State,
 
 970 So.2d 806, 822 (Fla.2007) (citing
 
 Apprendi,
 
 530 U.S. at 490, 120 S.Ct. 2348);
 
 Jones v. State,
 
 855 So.2d 611, 619 (Fla.2003). A Florida jury unanimously found Pham guilty of three violent felonies. Therefore, the trial court found that the death sentence was supported by the prior violent felony aggravating circumstance, which satisfies express exceptions to
 
 Apprendi
 
 that were unaltered by
 
 Ring.
 

 Additionally, this Court has repeatedly rejected the argument that aggravating circumstances must be alleged in the indictment.
 
 See, e.g., Coday v. State,
 
 946 So.2d 988, 1006 (Fla.2006) (rejecting the defendant’s argument that the failure to allege the aggravating circumstances in the indictment renders a sentence unconstitutional under Ring);
 
 Ibar v. State,
 
 938 So.2d 451, 473 (Fla.2006) (noting that the defendant’s claim that the indictment was defective because it did not provide notice of the aggravators had been addressed adversely to the defendant);
 
 Blackwelder v. State,
 
 851 So.2d 650, 654 (Fla.2003) (observing that this Court had rejected the argument that aggravating circumstances must be alleged in the indictment);
 
 Kormondy v. State,
 
 845 So.2d 41, 54 (Fla.2003) (explaining that
 
 Ring
 
 does not require notice of the aggravating factors that the State will present);
 
 see also Rogers v. State,
 
 957 So.2d 538, 554 (Fla.2007) (noting that this Court has consistently held that neither
 
 Apprendi
 
 nor
 
 Ring
 
 requires that aggravating circumstances be alleged in the indictment).
 

 “[W]e have rejected claims that
 
 Ring
 
 requires the aggravating circumstances to be alleged in the indictment.”
 
 Ferrell v. State,
 
 918 So.2d 163, 180 (Fla.2005). A defendant is not entitled to notice of every aggravator in the indictment because the aggravators are clearly listed in the statutes.
 
 Lynch v. State,
 
 841 So.2d 362, 378 (Fla.2003) (citing
 
 Vining v. State,
 
 637 So.2d 921, 928 (Fla.1994)).... [0]ne of the aggravators in this case is the prior violent felony ag-gravator, which both the United States Supreme Court and this Court have recognized as an exception to the requirement that the jury must make all the findings necessary to enhance a defendant’s sentence.
 
 Ring,
 
 536 U.S. at 597 n. 4, 122 S.Ct. 2428;
 
 see also Patton v. State,
 
 878 So.2d 368, 377 (Fla.2004) (“The existence of this prior violent felony aggravator satisfies the mandates of the United States and Florida constitutions .... ”);
 
 Kormondy v. State,
 
 845 So.2d 41, 54 n. 3 (Fla.2003) (finding the prior violent felony aggravator through contemporaneous charges of robbery, sexual assault, and battery included in the indictment and affirmed by the jury satisfies
 
 Ring’s
 
 requirements).
 

 England v. State,
 
 940 So.2d 389, 407 (Fla. 2006).
 

 We have not receded from these cases. Thus, we reject Pham’s argument.
 

 HAC Aggravator
 

 Pham contends that because there was no intentional torture of the victim, the trial court erred in finding that the murder was especially heinous, atrocious, or cruel. The State argues that there is no legal basis for Pham’s claim because this Court has rejected the addition of an intent element to the aggravator. Because there is competent, substantial evidence to support the trial court’s finding, we deny this claim.
 

 “In reviewing an aggravating factor challenged on appeal, this Court’s task ‘is to review the record to determine whether the trial court applied the right rule of law for each aggravating circumstance, and, if so, whether competent sub
 
 *497
 
 stantial evidence supports its finding.’ ”
 
 Douglas v. State,
 
 878 So.2d 1246, 1260-61 (Fla.2004) (quoting
 
 Willacy v. State,
 
 696 So.2d 693, 695 (Fla.1997)).
 

 We have explained the meaning of the HAC aggravator as follows:
 

 It is our interpretation that heinous means extremely wicked or shockingly evil; that atrocious means outrageously wicked and vile; and, that cruel means designed to inflict a high degree of pain with utter indifference to, or even enjoyment of, the suffering of others. What is intended to be included are those capital crimes where the actual commission of the capital felony was accompanied by such additional acts as to set the crime apart from the norm of capital felonies— the conscienceless or pitiless crime which is unnecessarily torturous to the victim.
 

 State v. Dixon,
 
 283 So.2d 1, 9 (Fla.1973);
 
 see also Guzman v. State,
 
 721 So.2d 1155, 1159 (Fla.1998) (“The HAC aggravator applies only in torturous murders — those that evince extreme and outrageous depravity as exemplified either by the desire to inflict a high degree of pain or utter indifference to or enjoyment of the suffering of another.”). We have also stated that “[ujnlike the cold, calculated and premeditated aggravator, which pertains specifically to the state of mind, intent and motivation of the defendant, the HAC ag-gravator focuses on the means and manner in which death is inflicted and the immediate circumstances surrounding the death.”
 
 Brown v. State,
 
 721 So.2d 274, 277 (Fla.1998) (citing
 
 Stano v. State,
 
 460 So.2d 890, 893 (Fla.1984)).
 

 Furthermore, we have held that “[i]n determining whether the HAC factor was present, the focus should be upon the victim’s perceptions of the circumstances as opposed to those of the perpetrator.”
 
 Lynch v. State,
 
 841 So.2d 362, 369 (Fla.2003). The victim’s mental state may be evaluated in accordance with common-sense inferences from the circumstances.
 
 Swafford v. State,
 
 533 So.2d 270, 277 (Fla.1988). We have also held that to support this aggravating circumstance, the evidence must show that the victim was conscious and aware of impending death.
 
 Douglas v. State,
 
 878 So.2d 1246, 1261 (Fla.2004). However, we have also explained that the actual length of the victim’s consciousness is not the only factor relevant to this aggravator.
 
 Beasley v. State,
 
 774 So.2d 649, 669 (Fla.2000). “[F]ear, emotional strain, and terror of the victim during the events leading up to the murder may make an otherwise quick death especially heinous, atrocious, or cruel.”
 
 James v. State,
 
 695 So.2d 1229, 1235 (Fla.1997);
 
 see also Swafford,
 
 533 So.2d at 277. We have further held that the actions of the defendant preceding the actual killing are also relevant.
 
 Gore v. State,
 
 706 So.2d 1328, 1335 (Fla.1997).
 

 In
 
 Cox v. State,
 
 819 So.2d 705 (Fla.2002), we noted, “Obviously, a victim’s suffering and awareness of his or her impending death certainly supports the finding of the heinous, atrocious, or cruel aggravating circumstance where there is a merciless attack ... as occurred here.”
 
 Id.
 
 at 720. Here, Phi was conscious during at least part of her attack. She was stabbed at least six times, and the medical examiner testified that the nature of her wounds would have caused her a high degree of pain. Further, her attack was unprovoked and witnessed by her daughter. The evidence established that Phi motioned for her daughter to leave the apartment and that one of her wounds was consistent with her having grabbed the blade of the knife. Accordingly, there is competent, substantial evidence to support the trial court’s finding of the HAC aggravator.
 

 
 *498
 

 CCP Aggravator
 

 Pham contends that the trial court erred in finding that the murder was cold, calculated, and premeditated. Because there is competent, substantial evidence to support the trial court’s finding, we deny this claim.
 

 In deciding whether a lower court erred in its finding of an aggravator, this Court does not reweigh the evidence to determine whether an aggravator was proven beyond a reasonable doubt but instead “review[s] the record to determine whether the trial court applied the right rule of law for each aggravating circumstance and, if so, whether competent substantial evidence supports its finding.”
 
 Franklin v. State,
 
 965 So.2d 79, 98 (Fla. 2007) (quoting
 
 Willacy,
 
 696 So.2d at 695). In order to find CCP as an aggravating factor:
 

 [T]he jury must determine that the killing was a product of cool and calm reflection and not an act prompted by emotional frenzy, panic, or a fit of rage (cold); and that the defendant had a careful plan or prearranged design to commit murder before the fatal incident (calculated); and that the defendant exhibited heightened premeditation (premeditated); and that the defendant had no pretense of moral or legal justification.
 

 Anderson v. State,
 
 868 So.2d 169, 176-77 (Fla.2003) (quoting
 
 Jackson v. State,
 
 648 So.2d 85, 89 (Fla.1994)). CCP can be established by evidence of “advance procurement of a weapon, lack of resistance or provocation, and the appearance of a killing carried out as a matter of course.”
 
 Davis v. State,
 
 859 So.2d 465, 479 (Fla. 2003).
 

 It is the State’s burden to prove beyond a reasonable doubt that the murder was the product of cool and calm reflection and not an act of emotional frenzy or panic or a fit of rage.
 
 Walker v. State,
 
 957 So.2d 560, 581 (Fla.2007). “[T]he facts supporting CCP must focus on the manner in which the crime was executed, e.g., advance procurement of weapon, lack of provocation, killing carried out as a matter of course.”
 
 Id.
 
 (quoting
 
 Lynch v. State,
 
 841 So.2d 362, 372 (Fla.2003)). Premeditation for CCP may be indicated by circumstances showing taking a murder weapon to the scene, lack of victim resistance, and “the appearance of killing as a matter of course” such as in an “execution style” killing.
 
 Franklin,
 
 965 So.2d at 98.
 

 A determination of whether CCP is present is properly based on a consideration of the totality of the circumstances.
 
 Wike v. State,
 
 698 So.2d 817, 823 (Fla.1997);
 
 see also Lynch,
 
 841 So.2d at 372;
 
 Rodriguez v. State,
 
 753 So.2d 29, 46 (Fla.2000);
 
 Occhicone v. State,
 
 570 So.2d 902, 905 (Fla.1990). The scope of review is limited “to ensuring that the trial court applied the correct rule of law and, if so, that there is competent, substantial evidence to support its findings.”
 
 Caballero v. State,
 
 851 So.2d 655, 661 (Fla.2003) (citing
 
 Willacy v. State,
 
 696 So.2d 693, 695 (Fla.1997)). “Competent substantial evidence is tantamount to legally sufficient evidence, and [this Court] assesses] the record evidence for its sufficiency only, not its weight.”
 
 McCoy v. State,
 
 853 So.2d 396, 407 (Fla.2003) (alterations in original) (quoting
 
 Almeida v. State,
 
 748 So.2d 922, 932 (Fla.1999)).
 

 We have also found the heightened premeditation required to support CCP where a defendant has a lengthy period of reflection and the opportunity to abandon the plan but, instead, commits the murder.
 
 Alston v. State,
 
 723 So.2d 148, 162 (Fla.1998). We explained in
 
 Alston
 
 that where the defendant had ample opportunity to release the victim but instead, after
 
 *499
 
 substantial reflection, “acted out the plan [he] had conceived during the extended period in which [the] events occurred,” heightened premeditation was proven.
 
 Id.
 
 (alterations in original) (quoting
 
 Jackson v. State,
 
 704 So.2d 500, 505 (Fla.1997));
 
 see also Looney v. State,
 
 803 So.2d 656, 679 (Fla.2001). Legally sufficient evidence also exists to support CCP where the defendant procures a murder weapon in advance, receives absolutely no resistance or provocation on the part of the victim, and carries out the killing as a matter of course.
 
 McCoy,
 
 853 So.2d at 407.
 

 In
 
 Lynch v. State,
 
 841 So.2d 362, 368 (Fla.2003) (quoting
 
 Way v. State,
 
 760 So.2d 903, 918 (Fla.2000)), we explained the standard of review of a trial court’s finding of an aggravating factor:
 

 [I]t is not this Court’s function to reweigh the evidence to determine whether the State proved each aggravating circumstance beyond a reasonable doubt.... Rather, our task on appeal is to review the record to determine whether the trial court applied the right rule of law for each aggravating circumstance and, if so, whether competent substantial evidence supports its finding.
 

 Within the confínes of this deferential standard of review, we closely scrutinize the evidence to ensure that the CCP finding is supported.
 
 See, e.g., Santos v. State,
 
 591 So.2d 160, 162 (Fla.1992) (“[T]he record discloses that the State failed to prove beyond a reasonable doubt that the present murder was cold, calculated, and premeditated.”);
 
 Mahn v. State,
 
 714 So.2d 391 (Fla.1998) (finding trial court abused its discretion in finding CCP because “to satisfy the burden of proof, the circumstantial evidence must be inconsistent with any reasonable hypothesis which might negate the aggravating factor”) (quoting
 
 Geralds v. State,
 
 601 So.2d 1157, 1163 (Fla.1992)). Moreover, we have explained that heightened premeditation exists “where a defendant has the opportunity to leave the crime scene and not commit the murder but, instead, commits the murder.”
 
 Owen v. State,
 
 862 So.2d 687, 701 (Fla.2003).
 

 Here, Pham arrived with two knives. He bound Lana to prevent her escape. He hid her phone to prevent her from calling for help. He waited for approximately one hour before Phi returned home and then attacked her immediately. Pham set up the murder scene by hiding the knives under Lana’s mattress while waiting for Phi to return home and hiding behind Lana’s closet door once she arrived. Accordingly, there is competent, substantial evidence to support the trial court’s finding of the CCP aggravator.
 

 Proportionality
 

 As explained by this Court in
 
 Tillman v. State,
 
 591 So.2d 167 (Fla.1991):
 

 The requirement that death be administered proportionately has a variety of sources in Florida law, including the Florida Constitution’s express prohibition against unusual punishments. Art. I, § 17, Fla. Const. It clearly is “unusual” to impose death based on facts similar to those in cases in which death previously was deemed improper.
 
 Id.
 
 Moreover, proportionality review in death cases rests at least in part on the recognition that death is a uniquely irrevocable penalty, requiring a more intensive level of judicial scrutiny or process than would lesser penalties. Art. I, § 17, Fla. Const.
 

 Id.
 
 at 169 (footnote omitted). The purpose of this Court’s proportionality review is to “foster uniformity in death-penalty law.”
 
 Id.
 
 In performing this review, this Court “must never lose sight of the fact that the death penalty has long been reserved for only the most aggravated and least mitigated of first-degree murders.”
 
 Urbin v. State,
 
 714 So.2d 411, 416 (Fla.1998). Fur
 
 *500
 
 thermore, proportionality review is a consideration of the totality of the circumstances in a case in comparison with other capital cases.
 
 Porter v. State,
 
 564 So.2d 1060, 1064 (Fla.1990). It entails a
 
 “qualitative
 
 review by this Court of the underlying basis for each aggravator and miti-gator rather than a quantitative analysis.”
 
 Urbin,
 
 714 So.2d at 416.
 

 Proportionality review “is not a comparison between the number of aggravating and mitigating circumstances.”
 
 Porter v. State,
 
 564 So.2d 1060, 1064 (Fla.1990). Instead, the Court looks at the totality of the circumstances to determine if death is warranted in comparison to other cases where the sentence of death has been upheld.
 
 Id.
 
 This Court has made clear that HAC is one of the “most serious aggravators set out in the statutory sentencing scheme.”
 
 Larkins v. State,
 
 739 So.2d 90, 95 (Fla.1999).
 

 England,
 
 940 So.2d at 408.
 

 “Because death is a unique punishment, it is necessary in each case to engage in a thoughtful, deliberate proportionality review to consider the totality of circumstances in a case, and to compare it with other capital cases. It is not a comparison between the number of aggravating and mitigating circumstances.”
 
 Tillman,
 
 591 So.2d at 169 (quoting
 
 Porter,
 
 564 So.2d at 1064). This Court’s function is not to re-weigh the aggravators and miti-gators, but to accept the jury’s recommendation and the judge’s weighing of the evidence.
 
 Bates v. State,
 
 750 So.2d 6 (Fla.1999).
 

 This Court reviews and considers all the circumstances in a case relative to other capital cases when deciding whether death is a proportionate penalty and to ensure uniformity.
 
 See Johnson v. State,
 
 720 So.2d 232 (Fla.1998);
 
 Urbin v. State,
 
 714 So.2d 411, 416-17 (Fla.1998). The death penalty is reserved only for those cases where the most aggravating and least mitigating circumstances exist.
 
 See Kramer v. State,
 
 619 So.2d 274, 278 (Fla.1993).
 

 Under the totality of the circumstances, Pham’s sentence is proportional in relation to other death sentences that this Court has upheld.
 
 See, e.g., Banks v. State,
 
 46 So.3d 989 (Fla.2010) (death sentence proportionate in a stabbing murder where the jury recommended death ten-to-two and the trial court found three aggravators: prior violent felony, HAC, and CCP; and five mitigating circumstances: low IQ, brain deficit, antisocial personality traits, not the only participant, and difficult youth);
 
 Merck v. State,
 
 975 So.2d 1054 (Fla.2007) (death sentence proportionate for stabbing murder where trial court found prior violent felony and HAC aggra-vators, statutory age mitigator, and several nonstatutory mitigators, including a difficult family background, alcohol use the night of the murder, and a capacity to form positive relationships);
 
 Singleton v. State,
 
 783 So.2d 970 (Fla.2001) (death sentence proportionate for stabbing murder where trial court found prior violent felony and HAC aggravators as well as substantial mitigation, including extreme mental or emotional disturbance, impaired capacity to appreciate criminality of conduct or to conform conduct to requirements of law, and that defendant was under influence of alcohol and possibly medication at time of offense);
 
 Blackwood v. State, 777
 
 So.2d 399 (Fla.2000) (death sentence proportionate for strangulation murder where trial court found HAC aggravator, one statutory mitigator, and eight nonstatutory miti-gators).
 

 The jury voted ten-to-two to recommend death. The trial court found in aggravation: (1) Pham was previously convicted of another capital felony or of a felony involv
 
 *501
 
 ing the use of threat of violence to the person; (2) the capital felony was committed while Pham was engaged in the commission of a burglary and kidnapping; (3) the capital felony was especially heinous, atrocious, or cruel; and (4) the capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. As mitigation, the trial court found: (1) the capital felony was committed while Pham was under the influence of mental or emotional disturbance; (2) Pham’s capability to appreciate the criminality of his conduct or conform to the requirements of law was impaired, although not substantially; (3) Pham’s traumatic childhood had a negative impact on his emotional and mental development; and (4) Pham had a stable employment history and was considered a hardworking employee. We find that this case meets the criteria of being aggravated with little mitigation. Thus, the death sentence is proportionate.
 

 Sufficiency of the Evidence
 

 Although Pham does not raise the issue of sufficiency of the evidence on appeal, this Court has an independent obligation to review the record to determine whether sufficient evidence exists to support Pham’s conviction.
 
 See Bevel v. State,
 
 983 So.2d 505, 516 (Fla.2008);
 
 see also
 
 Fla. R.App. P. 9.142(a)(6) (“In death penalty cases, whether or not insufficiency of the evidence or proportionality is an issue presented for review, the court shall review these issues and, if necessary, remand for the appropriate relief.”).
 

 “In appeals where the death penalty has been imposed, this Court independently reviews the record to confirm that the jury’s verdict is supported by competent, substantial evidence.”
 
 Davis v. State,
 
 2 So.3d 952, 966-67 (Fla.2008) (citing Fla. RApp. P. 9.142(a)(6)). “In determining the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt.”
 
 Simmons v. State,
 
 934 So.2d 1100, 1111 (Fla.2006) (quoting
 
 Bradley v. State,
 
 787 So.2d 732, 738 (Fla.2001)). Although Caraballo did not expressly challenge the sufficiency of the evidence as to each of his convictions, we conclude that sufficient evidence was presented at trial for the jury to find Caraballo guilty of all seven felonies.
 

 Caraballo v. State,
 
 39 So.3d 1234, 1243-44 (Fla.2010).
 

 “This Court reviews ‘the record of a death penalty case to determine whether the evidence is sufficient to support the murder conviction.’
 
 Winkles v. State,
 
 894 So.2d 842, 847 (Fla.2005);
 
 see also Davis v. State,
 
 859 So.2d 465, 480 (Fla.2003).”
 
 Banks,
 
 46 So.3d at 999.
 

 [T]his Court has a mandatory obligation to independently review the sufficiency of the evidence in every case in which a sentence of death has been imposed.
 
 See Blake v. State,
 
 972 So.2d 839, 850 (Fla.2007); Fla. R.App. P. 9.142(a)(6). “In determining the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt.”
 
 Bradley v. State,
 
 787 So.2d 732, 738 (Fla.2001) (citing
 
 Banks v. State,
 
 732 So.2d 1065, 1068 n. 5 (Fla. 1999)).
 

 Miller,
 
 42 So.3d at 227.
 

 Pham was convicted of first-degree premeditated murder, attempted first-degree premeditated murder, armed kidnapping, and armed burglary of a dwelling. The jury was instructed on both
 
 *502
 
 premeditated and felony first-degree murder, and found Pham guilty of first-degree murder. Because the jury was instructed on both theories of first-degree murder and found Pham guilty on a general verdict form, the evidence must support either premeditated or felony murder.
 
 See Dessaure v. State,
 
 891 So.2d 455, 472 (Fla.2004). There is competent sufficient evidence to support both theories as well as attempted first-degree murder, armed kidnapping, and armed burglary of a dwelling.
 

 First, there is competent, substantial evidence to support Pham’s conviction of first-degree murder under a theory of premeditated murder.
 
 See
 
 § 782.04(1)(a)1., Fla. Stat. (2005) (“The unlawful killing of a human being ... when perpetrated from a premeditated design to effect the death of the person killed or any human being ... is murder in the first degree and constitutes a capital felony.... ”). We have defined premeditation as follows:
 

 Premeditation is defined as more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act.
 

 Bradley v. State,
 
 787 So.2d 732, 738 (Fla. 2001) (quoting
 
 Woods v. State,
 
 733 So.2d 980, 985 (Fla.1999));
 
 see also Buckner v. State,
 
 714 So.2d 384, 387 (Fla.1998) (“Premeditation need only exist for such time as will allow the accused to be conscious of the nature of the act the accused is about to commit and the probable result of the act.”). In this case, there is both direct and circumstantial evidence that Pham killed the victim in a premeditated manner.
 

 Lana Pham testified that Pham entered the apartment she shared with her mother and sisters without her permission. She further testified that he tied her up while they awaited her mother’s return. The picture evidence presented at trial supports that Lana had been tied. Further, Pham admitted to binding her, stating that she consented to it but that it was a mistake. After Phi returned to the apartment, Lana testified that she observed Pham strike her mother with one of the knives he had brought with him. Although Higgins did not enter the apartment until after Phi had been stabbed, his testimony supports Lana’s version of events. He testified that he heard screaming as he approached the apartment and that when he entered he saw Lana standing over her mother. Further, Higgins.testified that Pham lunged at him with a knife and that Higgins used his motorcycle helmet to fend off Pham’s attack. The 911 tape played at trial established that Pham and Higgins were fighting while Phi was dying, despite Pham’s testimony that the attack began when Higgins struck him and that he never stabbed Phi. Also captured on the tape is Lana’s distress and the struggle between Higgins and Pham. When officers arrived on the scene, Pham and Higgins were still involved in a struggle; Phi was dead; and Lana had possession of one of the knives.
 

 Based on the direct and circumstantial evidence, there is competent, substantial evidence to support Pham’s conviction for first-degree murder under the theory of premeditated murder. The facts reveal that there was sufficient time before the killing for Pham to have formed a conscious intent to kill.
 

 Second, thei’e is competent, substantial evidence to support Pham’s conviction of first-degree murder under the theory of felony murder.
 
 See
 
 § 782.04(1)(a)2., Fla. Stat. (2005) (“The unlawful killing of a human being ... When committed by a person engaged in the perpetration of, or
 
 *503
 
 in the attempt to perpetrate, any ... Burglary ... [or] Kidnapping ... is murder in the first degree and constitutes a capital felony....”). Likewise, it appears that there is competent, substantial evidence to support Pham’s convictions of attempted first-degree murder,
 
 [7]
 
 armed kidnapping,
 
 [8]
 
 and armed burglary of a dwelling.
 
 [9]
 

 In this case, there is competent, substantial evidence that Pham committed the murder while in the commission of an armed burglary and kidnapping. Lana testified that she did not open the door for Pham and was unaware of his presence until she was being dragged by her hair to her bedroom; that she looked up and saw her stepfather holding two knives; and that once in her room her wrists and ankles were tied to prevent her from leaving while her phone and the knives were placed under her mattress. Pham confessed at trial that he had bound Lana’s hands and feet.
 

 Further, there is competent, substantial evidence to support Pham’s conviction of first-degree murder under the felony murder as well as the underlying felonies of attempted first-degree murder, armed kidnapping, and armed burglary of a dwelling. The facts reveal that Pham entered Phi’s apartment without permission intending to kill his ex-wife. As previously noted, the facts reveal that once inside, Pham dragged Lana by her hair into her bedroom and bound her to keep her from escaping or warning her mother. He then waited for approximately one hour for Phi to return home and stabbed her repeatedly without provocation. Finally, when Higgins attempted to stop him, he struck Higgins’ head with a meat cleaver.
 

 In conclusion, upon review of the record, competent, substantial evidence exists to support Pham’s murder conviction on either theory of first-degree murder as well as his convictions of attempted first-degree murder, armed kidnapping, and armed burglary of a dwelling.
 

 Based on the foregoing, we affirm Pham’s convictions and sentences.
 

 It is so ordered.
 

 CANADY, C.J., and PARIENTE, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 LEWIS, J., concurs in result.
 

 [1]
 

 .
 
 Spencer v. State,
 
 615 So.2d 688 (Fla. 1993).
 

 [2]
 

 . In aggravation, the court found the following: (1) Pham was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person— great weight; (2) the capital felony was committed while the defendant was engaged, or was an accomplice in the commission of or attempt to commit or flight after committing or attempting to commit robbery; sexual battery; aggravated child abuse; abuse of an elderly person or disabled adult resulting in great bodily harm, permanent disability, or permanent disfigurement; arson; burglary; kidnapping; aircraft piracy; or unlawful throwing, placing, or discharging of a destructive device or bomb — moderate weight; (3) the capital felony was especially heinous, atrocious, or cruel — great weight; (4) the capital felony was a homicide and was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification — no evidence of any moral or legal justification was presented and argued.
 

 [3]
 

 .The following statutory or nonstatutory mitigating circumstances were considered; (1) the capital felony was committed while the Defendant was under the influence of extreme mental or emotional disturbance; the court did not find "extreme” mental or emotional disturbance — -moderate weight as a non-statutory mitigator; (2) capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired — moderate weight as a non-statutory mitigator; (3) existence of any other factor in the Defendant’s background — great weight; (4) Defendant had stable employment history — some weight; (5) Defendant was a good father and caring husband — -not established; (6) Defendant cared for his sister’s children for two weeks while their parents recuperated from a car accident — not a mitigating circumstance.
 

 [4]
 

 . In an apparent oversight, this juror is referred to only as "Mr. Valenti” in the record and briefs.
 

 [5]
 

 .
 
 Apprendi v. New Jersey,
 
 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).
 

 [6]
 

 .
 
 Ring v. Arizona,
 
 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).
 

 [n.2]
 

 N.2] Although the offense occurred after the capital felony in this case it can be considered as an aggravating circumstance because the conviction was entered prior to sentencing for the capital felony.
 
 Brown v. State,
 
 473 So.2d 1260 (Fla.1985) and
 
 Elledge v. State,
 
 346 So.2d 998 (Fla. 1977).
 

 [7]
 

 . § 777.04(1), 782.04(l)(a), Fla. Stat. (2005).
 

 [8]
 

 . § 787.01(l)(a)2, § 775.087(1), § 775.087(2)(a)l„ Fla. Stat. (2005).
 

 [9]
 

 .§ 810.02(l)(b), § 810.02(2)09, § 810.07, Fla. Stat. (2005).