# Supreme Court of Florida

_____

No. SC17-1355
_____

**ENOCH D. HALL,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[April 12, 2018]

PER CURIAM.

This case is before the Court on appeal from an order denying a Successive

Motion to Vacate Death Sentence pursuant to *Hurst v. State*, 202 So. 3d 40 (Fla.

2016), *cert. denied*, 137 S. Ct. 2161 (2017), under Florida Rule of Criminal

Procedure 3.851.  Because the order concerns postconviction relief from a sentence

of death, we have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.

## FACTS AND BACKGROUND

This Court has previously detailed the underlying facts of this case.  *Hall v.*

*State* (*Hall I*), 107 So. 3d 262, 267-71 (Fla. 2012).  Relevant to the instant

proceeding, Hall, an inmate at Tomoka Correctional Institution (TCI), was

convicted and sentenced to death for the first-degree murder of Correctional

Officer (CO) Donna Fitzgerald. *Hall v. State* (*Hall II*), 212 So. 3d 1001, 1009 (Fla.

2017). After a penalty phase, the jury returned a unanimous death sentence. *Id.* at

1012.[1] Hall appealed, and this Court ultimately affirmed his conviction and

---

1. As we stated in *Hall I*,

> In the trial court's Sentencing Order, the court found five aggravators: (1) previously convicted of a felony and under sentence of imprisonment—great weight; (2) previously convicted of another capital felony or of a felony involving the use or threat of violence to the person—great weight; (3) committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws—great weight; (4) especially heinous, atrocious or cruel [(HAC)]—very great weight; (5) cold, calculated, and premeditated [(CCP)]—very great weight; (6) the victim of the capital felony was a law enforcement officer engaged in the performance of his or her official duties—no weight—merged with aggravator number 3 as listed above. In mitigation, the sentencing court found no statutory mitigators and eight non-statutory mitigating circumstances: (1) Hall was a good son and brother—some weight; (2) Hall's family loves him—little weight; (3) Hall was a good athlete who won awards and medals—little weight; (4) Hall was a victim of sexual abuse—some weight; (5) Hall was productively employed while in prison—some weight; (6) Hall cooperated with law enforcement—some weight; (7) Hall showed remorse—little weight; and (8) Hall displayed appropriate courtroom behavior—little weight. The trial court concluded that the aggravating circumstances far outweighed the mitigation and gave great weight to the jury's unanimous recommendation of death. Thus, the trial court imposed the sentence of death.

*Hall I*, 107 So. 3d at 270-71.

- 2 -

sentence. *See generally Hall I*, 107 So. 3d 262.[2] On October 7, 2013, the United

States Supreme Court denied certiorari, *Hall v. Florida*, 134 S. Ct. 203 (2013);

thus Hall's case became final on that date.

This Court affirmed the denial of Hall's initial motion for postconviction

relief and denied his petition for writ of habeas corpus. *Hall II*, 212 So. 3d at 1036.

During the pendency of his initial postconviction motion, Hall filed a Successive

Motion to Vacate Death Sentence pursuant to *Hurst*, which was denied by the

postconviction court. This appeal from the first successive motion for

postconviction relief follows.

## ANALYSIS

### Hall's Claims for Relief under *Hurst v. State*

We affirm the postconviction court's denial of relief on this claim for the

reasons discussed below. Most importantly, our opinion in *Hall II*, and our

corresponding *Hurst* harmless error analysis denying relief within that opinion,

already addressed the issues that Hall now attempts to present.

---

2. We did, however, find that the trial court's finding of the CCP aggravator
was not supported by competent, substantial evidence, and thus it was stricken.
*Hall I*, 107 So. 3d at 278-79.

*CCP Aggravator Stricken*

We conclude that this subclaim of Hall's successive postconviction motion fails on the merits. Notably, aside from *Wood v. State*, 209 So. 3d 1217, 1234 (Fla. 2017), which is distinguished below, Hall presents *no binding precedent* that supports his assertion that the stricken CCP aggravator in his case is sufficient to receive *Hurst* relief. Moreover, as discussed below, our recent decisions in *Middleton v. State*, 220 So. 3d 1152 (Fla. 2017), *cert. denied*, 138 S. Ct. 829 (2018), and *Cozzie v. State*, 225 So. 3d 717, 729 (Fla. 2017), *cert. denied*, No. 17-7545 (U.S. Apr. 2, 2018), support the contrary conclusion.

In *Wood*, we struck both the CCP and avoid arrest aggravating factors, which were two of the three aggravators found by the trial court and to which it assigned "great weight." *Id.* at 1233. In ultimately determining that the error in *Wood* was not harmless, we emphasized:

> In this case the jury was instructed on both aggravating factors that we have determined were not supported by competent, substantial evidence. This alone would require a finding that the error was not harmless beyond a reasonable doubt. We note that our conclusion in this regard is also consistent with our pre-*Hurst* precedent in *Kaczmar v. State*, 104 So. 3d 990, 1008 (Fla. 2012), where we held that, upon striking the CCP and felony-murder aggravating factors *so that only one valid aggravating factor remained*, such error was not harmless beyond a reasonable doubt. Post-*Hurst*, this conclusion is even more compelling.
>
> . . . [T]he jury would have had to make these factual determinations that *the sole valid aggravating factor*—that the capital felony was committed while Wood was engaged, or was an

accomplice in the commission of a burglary and or robbery—
outweighed the mitigating circumstances established. "[W]e are not
so sanguine as to conclude that [Wood's] jury . . . would have found
[*this sole aggravating factor*] sufficient to impose death and that [*this
sole aggravating factor*] outweighed the mitigation."

*Id.* at 1234 (alterations in original) (emphasis added) (quoting *Hurst*, 202 So. 3d at

68). In determining that the error was harmful, we repeatedly emphasized that our

conclusion was influenced by the fact that *two of the three aggravators* presented

were stricken, leaving only *one* valid aggravating factor for the jury to properly

consider. Thus the harmless error analysis in *Wood* was based on the Court's

determination that the remaining *sole valid aggravating factor* was not sufficient to

support the sentence of death.[3]

Wood is distinguishable from Hall's case for numerous reasons. Firstly,

even after striking the CCP aggravator, Hall had *four* valid remaining aggravators,

all of which were afforded either "great weight" or "very great weight,"[4] as

---

3. Ultimately, in *Wood*, we did not order a new penalty phase because we
determined that Wood's death sentence was a disproportionate punishment when
the aggravators were stricken. 209 So. 3d at 1234.

4. "(1) [P]reviously convicted of a felony and under sentence of
imprisonment—great weight; (2) previously convicted of another capital felony or
of a felony involving the use or threat of violence to the person—great weight; (3)
committed to disrupt or hinder the lawful exercise of any governmental function or
the enforcement of laws—great weight; (4) especially heinous, atrocious or cruel—
very great weight; [and] (5) . . . the victim of the capital felony was a law
enforcement officer engaged in the performance of his or her official duties—no
weight—merged with aggravator number 3 as listed above." *Hall I*, 107 So. 3d at
270-71.

opposed to the *one* remaining aggravator found in *Wood*. Secondly, three of the remaining aggravators found in Hall's case (i.e., under sentence of imprisonment, previously convicted of another violent felony, and the victim was a law enforcement officer) were without dispute. Thus as we stated in our harmless error analysis in *Hall II*,

> Presuming that the jury did its job as instructed by the trial court, we are convinced that it would have still found the aggravators greatly outweighed the mitigators in this case. Indeed, it is inconceivable that a jury would not have found the aggravation in Hall's case unanimously, especially given the fact that three of the aggravators found were automatic . . . .

212 So. 3d at 1035. It is also worth noting that this Court, in conducting its harmless error analysis in *Hall II*, did not include the invalidated CCP aggravator in its analysis. *Id.* Instead, we found that the *Hurst* error, as it related to Hall's case, was harmless, even without the stricken CCP aggravator. *Id.* Thus we conclude that *Wood* is distinguishable from Hall's case.

Two other cases recently decided by our Court, *Middleton* and *Cozzie*, also lend support to the postconviction court's denial of this subclaim of Hall's successive postconviction motion.

*Middleton* involved a unanimous jury recommendation of death, where this Court ultimately struck the avoid arrest and CCP aggravators. 220 So. 3d at 1172. There, we explained:

"When this Court strikes an aggravating factor on appeal, 'the harmless error test is applied to determine whether there is no reasonable possibility that the error affected the sentence.'" *Williams v. State*, 967 So. 2d 735, 765 (Fla. 2007) (quoting *Jennings v. State*, 782 So. 2d 853, 863 n.9 (Fla. 2001)); *see also Diaz v. State*, 860 So. 2d 960, 968 (Fla. 2003) ("We find this error harmless, however, after consideration of the two remaining aggravating circumstances and the five mitigating circumstances in this case."). Despite striking the avoid arrest and CCP aggravators, two valid aggravators remain in this unanimous death-recommendation case. The two aggravators which remain are that the murder was especially heinous, atrocious, or cruel (HAC) and that is was committed during the commission of a burglary and for pecuniary gain, which were each given "great weight" by the trial court.

*Id.* In finding that the error in *Middleton* was harmless, we noted that there was no statutory mitigation and that "the trial court expressly stated that any of the considered aggravating circumstances found in this case, standing alone, would be sufficient to outweigh the mitigation in total presented." *Id.*[5] Thus because there was no reasonable possibility that the erroneous aggravators contributed to Middleton's sentence, we ultimately concluded that any errors there were harmless. *Id.*

Hall's case is similar to *Middleton* because significant aggravation remained, even without the stricken CCP aggravator, that "far outweighed the mitigation." *Hall I*, 107 So. 3d at 271. Furthermore, three of the remaining aggravators present

_____

5. The trial court in *Middleton* found eleven nonstatutory mitigators, all of which were afforded "some weight" or "little weight." 220 So. 3d at 1173.

in *Hall* are without and beyond dispute. The fourth aggravator that remains, HAC, is one of the weightiest in Florida, *see Jackson v. State*, 18 So. 3d 1016, 1035 (Fla. 2009), and was afforded "very great weight" by the trial court. Thus we conclude, as we have previously in Hall's initial postconviction case, that any error in Hall's case, like the errors in *Middleton*, was harmless. *See Hall II*, 212 So. 3d at 1035-36 (finding any *Hurst* error harmless).

Similarly, in *Cozzie*, we determined that "[e]ven if the avoid arrest aggravator were stricken . . . the unanimous death recommendation would still remain, along with the aggravators of CCP, HAC, and in the course of a felony, which are among the weightiest aggravators in our capital sentencing scheme." 225 So. 3d at 729. Furthermore, the remaining aggravators in *Cozzie* were afforded "great weight" by the trial court. *Id.*[6] Thus we ultimately determined that "any possible error was harmless because there was not a reasonable possibility that [Cozzie] would have received a life sentence without the trial court finding of the [avoid arrest] aggravator." *Id.* (alterations in original) (quoting *Aguirre-Jarquin v. State*, 9 So. 3d 593, 608 (Fla. 2009)).

---

6. The trial court found one statutory mitigator and twenty-five nonstatutory mitigators in *Cozzie*. Ultimately, the trial court, in weighing the aggravation and mitigation in *Cozzie,* concluded that the aggravators "far outweighed" the mitigators in sentencing Cozzie to death. 225 So. 3d at 726.

Hall has significant and weighty aggravation beyond the invalidated CCP aggravator. Further, the trial court in both *Cozzie* and here concluded that the aggravating circumstances "far outweigh[ed]" the mitigating circumstances. *Id.* at 725; *see Hall I*, 107 So. 3d at 271. Thus we conclude that *Cozzie* is factually similar to Hall's case.

Both Hall and the dissent attempt to conflate *nonbinding, dissenting opinions* with our *binding* post-*Hurst* death penalty precedent. However, as discussed above, our binding precedent dictates our conclusion that Hall's stricken CCP aggravator is harmless beyond a reasonable doubt.

We deny this subclaim of Hall's successive postconviction motion.

*Mental Health Mitigation Presentation*

We deny this subclaim in the successive postconviction motion because this Court has already heard and addressed the mental health mitigation in Hall's initial postconviction motion. Thus this claim is procedurally barred. In addition, even when considered on the merits, we conclude that this subclaim fails.

In his initial postconviction motion, Hall extensively asserted the claim that trial counsel was ineffective for not presenting mental health mitigation to the jury. Similarly, in our opinion on Hall's initial postconviction motion, we addressed the issue and determined that the trial court's ruling on counsel's strategy was supported by competent, substantial evidence. *Hall II*, 212 So. 3d at 1027-29.

Thus we conclude that this subclaim is procedurally barred, as it was raised and denied on Hall's previous postconviction motion. *See Hunter v. State*, 29 So. 3d 256, 267 (Fla. 2008).

Nevertheless, we also conclude that the subclaim should be denied on the merits. Primarily, under *Hurst* harmless error, this Court must look to the potential effect on the trier-of-fact, not on the potential effect on trial counsel's trial strategy. *Hurst*, 202 So. 3d at 68-69. Additionally, we have previously held that trial counsel is not required to anticipate changes in the law to provide effective legal representation. *See Lebron v. State*, 135 So. 3d 1040, 1054 (Fla. 2014) ("This Court has 'consistently held that trial counsel cannot be held ineffective for failing to anticipate changes in the law.' " (quoting *Cherry v. State*, 781 So. 2d 1040, 1053 (Fla. 2000))). Furthermore, under *Strickland v. Washington*, 466 U.S. 668 (1984), claims of ineffective assistance of counsel are assessed under the law in effect at the time of the trial. *Id.* at 689. Thus we conclude that Hall's subclaim also fails on the merits.

Caldwell v. Mississippi<i>, 472 U.S. 320 (1985).</i>

We deny this subclaim of Hall's successive postconviction motion because it fails on the merits. We have repeatedly rejected *Caldwell* challenges to the advisory standard jury instructions in the past. *See, e.g.*, *Rigterink v. State*, 66 So. 3d 866, 897 (Fla. 2011); *Globe v. State*, 877 So. 2d 663, 673-74 (Fla. 2004); *Card*

*v. State*, 803 So. 2d 613, 628 (Fla. 2001); *Sireci v. State*, 773 So. 2d 34, 40 nn.9 & 11 (Fla. 2000); *Teffeteller v. Dugger*, 734 So. 2d 1009, 1026 (Fla. 1999); *Brown v. State*, 721 So. 2d 274, 283 (Fla. 1998); *Burns v. State*, 699 So. 2d 646, 655 (Fla. 1997); *Johnson v. State*, 660 So. 2d 637, 647 (Fla. 1995). Additionally, as discussed in detail in our recent opinion in *Reynolds v. State*, No. SC17-793 (Fla. Apr. 5, 2018) (plurality opinion), we have now expressly rejected these post-*Hurst Caldwell* claims. *See also Franklin v. State*, 43 Fla. L. Weekly S86 (Feb. 15, 2018). Thus we deny relief on this subclaim of Hall's successive postconviction motion.

*Hall's Sentence Violates Due Process*

We deny this subclaim of Hall's successive postconviction motion because we have already addressed a *Hurst* harmless error analysis as it pertains to Hall's case in *Hall II*. 212 So. 3d at 1033-36. Thus this subclaim is duplicative.

Furthermore, the authority upon which Hall relies in support of his argument, *In re Winship*, 397 U.S. 358 (1970), is not determinative. The United States Supreme Court, in *In re Winship*, held that the State must prove all elements of a crime in a juvenile delinquency proceeding beyond a reasonable doubt, just as it would in an adult criminal proceeding, and that the failure to do so would result in a due process violation. 397 U.S. at 367-68. We conclude that *In re Winship* is distinguishable from Hall's case, however, because Hall's case does not concern a

juvenile delinquency proceeding. Moreover, although *Hurst* did result in the requirement that all aggravators and mitigators be proven beyond a reasonable doubt, as we previously stated in *Hall II*, the error in Hall's case was harmless. *See* 212 So. 3d at 1033-36 (discussing how the error was harmless due to Hall's unanimous death sentence). Thus we conclude that Hall's death sentence does not violate due process and thus hold that this subclaim is meritless.

Hall's Death Sentence Violates the Eighth Amendment

We deny this claim of Hall's successive postconviction motion because there was no harmful error in this case. *Hall II*, 212 So. 3d at 1036. In *Hurst*, we held that unanimity is required under the Eighth Amendment. Similarly, we have determined that defendants whose sentences became final post-*Ring* and who received unanimous jury recommendations are not entitled to *Hurst* relief if the error is deemed to be harmless pursuant to *Davis v. State*, 207 So. 3d 142, 173-75 (Fla. 2016). Hall's jury returned a unanimous recommendation, *Hall I*, 107 So. 3d at 270, his sentence became final after *Ring*, *see Hall v. Florida*, 134 S. Ct. 203, and the *Hurst* error was harmless. Therefore, we deny this claim of Hall's successive postconviction motion.

Hall's Indictment

Finally, Hall's argument with regard to his indictment also fails. Hall argues that he was denied his right to a proper indictment because the grand jury

indictment in his case did not list the aggravators. However, "this Court has repeatedly rejected the argument that aggravating circumstances must be alleged in the indictment." *Pham v. State*, 70 So. 3d 485, 496 (Fla. 2011) (citing *Rogers v. State*, 957 So. 2d 538, 554 (Fla. 2007); *Coday v. State*, 946 So. 2d 988, 1006 (Fla. 2006); *Ibar v. State*, 938 So. 2d 451, 473 (Fla. 2006); *Blackwelder v. State*, 851 So. 2d 650, 654 (Fla. 2003); *Kormondy v. State*, 845 So. 2d 41, 54 (Fla. 2003)). Nothing in *Hurst* indicates that our holding impacted this settled point of law; and we have also held prior to *Hurst* that "neither *Apprendi* nor *Ring* requires that aggravating circumstances be charged in the indictment." *Rogers*, 957 So. 2d at 554. Therefore, Hall's indictment claim fails.

## CONCLUSION

For the reasons set forth above, we affirm the postconviction court's order denying Hall relief on his successive motion for postconviction relief.

It is so ordered.

LABARGA, C.J., and LEWIS and LAWSON, JJ., concur.
CANADY and POLSTON, JJ., concur in result.
PARIENTE, J., dissents with an opinion, in which QUINCE, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

- 13 -

PARIENTE, J., dissenting.

In *Hall v. State* (*Hall II*), 212 So. 3d 1001 (Fla. 2017), this Court denied Hall relief under *Hurst*[7] based on the jury's unanimous recommendation for death. 212 So. 3d at 1035.[8] That opinion, which focused solely on the jury's unanimous recommendation for death, did not discuss the effect of the stricken cold, calculated, and premeditated (CCP) aggravator on the *Hurst* harmless error analysis.

In *Hall II*, I concurred in result without an opinion, and Justice Quince dissented as to the majority's denial of *Hurst* relief, explaining that some of the aggravating factors required a factual determination that this Court could not assume the jury made unanimously despite the jury's unanimous recommendation for death. 212 So. 3d at 1036-37 (Quince, J., concurring in part and dissenting in part). Concurring in result in *Hall II*, I did not consider the effect of the stricken CCP aggravator on this Court's *Hurst* harmless error analysis.

---

7. *Hurst v. State* (*Hurst*), 202 So. 3d 40 (Fla. 2016), *cert. denied*, 137 S. Ct. 2161 (2017); *see Hurst v. Florida*, 136 S. Ct. 616 (2016).

8. Despite having already denied Hall *Hurst* relief, this Court has addressed more than one request for *Hurst* relief from multiple defendants based on alternative arguments under the Sixth and Eighth Amendments. *See Hitchcock v. State*, 226 So. 3d 216, 217 n.2 (Fla.), *cert. denied*, 138 S. Ct. 513 (2017).

- 14 -

In this case, the per curiam opinion addresses the stricken CCP aggravating factor and finds our opinion in *Wood v. State*, 209 So. 3d 1217 (Fla. 2017), distinguishable. Per curiam op. at 5-6. Although Wood's death sentence was reversed on proportionality grounds, *Wood*, 209 So. 3d at 1221, as I explained on rehearing in *Middleton v. State*, 42 Fla. L. Weekly S637, 2017 WL 2374697 (Fla. June 1, 2017), this Court's opinion in *Wood* supports the conclusion that a stricken aggravating factor affects the *Hurst* harmless error analysis. *Id.* at S637-38, *1 (Pariente, J., dissenting).

In *Wood*, this Court stated: "Our inquiry post-*Hurst* must necessarily be the effect of any error on the jury's findings, rather than whether beyond a reasonable doubt the trial judge would have still imposed death." 209 So. 3d at 1233. Applying this statement on rehearing in *Middleton*, I explained the "serious[] flaw[]" in the majority's harmless error analysis:

> Instead of focusing on the effect of the error on the jury, the majority opinion conducted an erroneous and contradictory harmless error analysis that did not consider the effect of striking two of the four aggravating factors—avoid arrest and CCP—on the jury and instead focused on the effect the improper aggravators had on the trial court. . . . When the correct harmless error analysis, pursuant to our precedent, is conducted, I conclude that Middleton is entitled to a new penalty phase.
> Without even referencing, much less considering, the two stricken aggravators, the majority relied only on the jury's unanimous verdict to determine that the *Hurst* error in Middleton's case was harmless beyond a reasonable doubt. *Regardless of whether the failure to consider the effect of the two stricken aggravators on the jury was an oversight, it is clear that the analysis is incomplete.*

- 15 -

*Middleton*, 42 Fla. L. Weekly at S638, 2017 WL 2374697, at *1 (Pariente, J.,

dissenting) (citations omitted) (emphasis added).  Like in *Middleton*, in denying

Hall *Hurst* relief in *Hall II*, this Court did not consider the effect of the stricken

CCP aggravating factor.  Per curiam op. at 6.

As I also explained in *Middleton*, a stricken aggravating factor significantly

affects the *Hurst* harmless error analysis:

> Indeed, the essence of the United States Supreme Court's decision in *Hurst v. Florida*, 136 S. Ct. 616 (2016), was refocusing Florida's capital sentencing scheme on the jury . . . . *Id.* at 624.  As this Court stated in *DiGuilio v. State*, 491 So. 2d 1129 (Fla. 1986), "Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence.  The focus is on the effect of the error on the trier-of-fact." *Id.* at 1139.  Therefore, in determining whether the *Hurst* error . . . was harmless beyond a reasonable doubt, we must focus on how the stricken aggravating factors could have affected the jury's recommendation for death. . . .
> Because the jury . . . was instructed on the . . . aggravating factors that this Court determined were not supported by competent, substantial evidence, this Court must consider the impact that the inappropriate aggravating factors had on the jury's ultimate verdict in determining whether the *Hurst* error was harmless beyond a reasonable doubt.  *Despite the jury's unanimous recommendation for death, this Court has no way of knowing that the jury would have reached the same verdict if it had been instructed on only the . . . valid aggravators. . . .*  Nor can we assume that the jury would have unanimously found the remaining aggravators sufficient to impose death or unanimously found that the aggravation (without the two stricken aggravating factors) outweighed the mitigation.
> In short, it is sheer speculation to assume that even without [the stricken] aggravators, the jury would have still unanimously recommended death.  Thus, the Court is in no position to conclude

- 16 -

that the unanimous jury recommendation renders the *Hurst* error harmless beyond a reasonable doubt.

*Middleton*, 42 Fla. L. Weekly at S638, 2107 WL 2374697, at \*2 (Pariente, J., dissenting) (emphasis added) (citations omitted).

Likewise, in Hall's case, this Court has no way of knowing whether the unsupported CCP aggravating factor contributed to the jury's unanimous recommendation for death, or whether it affected the jury's conclusion that the aggravating factors were sufficient to impose death and that the aggravation outweighed the mitigation. *See Hurst*, 202 So. 3d at 44. In fact, the stricken aggravating factor in Hall's case "is among the most serious aggravators set out in the statutory sentencing scheme." *Wood*, 209 So. 3d at 1228 (quoting *Deparvine v. State*, 995 So. 2d 351, 381 (Fla. 2008)). Thus, I would conclude that because of the stricken CCP aggravating factor in Hall's case, the State cannot establish that the *Hurst* error is harmless beyond a reasonable doubt and would grant Hall a new penalty phase.

Accordingly, I dissent.

QUINCE, J., concurs.

An Appeal from the Circuit Court in and for Volusia County,
    Raul A. Zambrano, Judge - Case No. 642008CF033412XXXAES

James Vincent Viggiano, Jr., Capital Collateral Regional Counsel, Ann Marie Mirialakis and Ali A. Shakoor, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Doris Meacham, Assistant Attorney General, Daytona Beach, Florida,

for Appellee