PER CURIAM.
This case is before the Court on appeal from an order denying a Successive Motion to Vacate Death Sentence pursuant to Hurst v. State , 202 So.3d 40 (Fla. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 2161, 198 L.Ed.2d 246 (2017), under Florida Rule of Criminal Procedure 3.851. Because the order concerns postconviction relief from a sentence of death, we have jurisdiction. See art. V, § 3(b)(1), Fla. Const.
FACTS AND BACKGROUND
This Court has previously detailed the underlying facts of this case. Hall v. State (Hall I ), 107 So.3d 262, 267-71 (Fla. 2012). Relevant to the instant proceeding, Hall, an inmate at Tomoka Correctional Institution (TCI), was convicted and sentenced to death for the first-degree murder of Correctional Officer (CO) Donna Fitzgerald. Hall v. State (Hall II ), 212 So.3d 1001, 1009 (Fla. 2017). After a penalty phase, the jury returned a unanimous death sentence. Id. at 1012.[1] Hall appealed, and this Court ultimately affirmed his conviction and sentence. See generally Hall I , 107 So.3d 262.[2] On October 7, 2013, the United States Supreme Court denied certiorari, Hall v. Florida , 571 U.S. 878, 134 S.Ct. 203, 187 L.Ed.2d 137 (2013) ; thus Hall's case became final on that date.
This Court affirmed the denial of Hall's initial motion for postconviction relief and *213 denied his petition for writ of habeas corpus. Hall II , 212 So.3d at 1036. During the pendency of his initial postconviction motion, Hall filed a Successive Motion to Vacate Death Sentence pursuant to Hurst , which was denied by the postconviction court. This appeal from the first successive motion for postconviction relief follows.
ANALYSIS
Hall's Claims for Relief under Hurst v. State
We affirm the postconviction court's denial of relief on this claim for the reasons discussed below. Most importantly, our opinion in Hall II , and our corresponding Hurst harmless error analysis denying relief within that opinion, already addressed the issues that Hall now attempts to present.
CCP Aggravator Stricken
We conclude that this subclaim of Hall's successive postconviction motion fails on the merits. Notably, aside from Wood v. State , 209 So.3d 1217, 1234 (Fla. 2017), which is distinguished below, Hall presents no binding precedent that supports his assertion that the stricken CCP aggravator in his case is sufficient to receive Hurst relief. Moreover, as discussed below, our recent decisions in Middleton v. State , 220 So.3d 1152 (Fla. 2017), cert. denied , --- U.S. ----, 138 S.Ct. 829, 200 L.Ed.2d 326 (2018), and Cozzie v. State , 225 So.3d 717, 729 (Fla. 2017), cert. denied , --- U.S. ----, 138 S.Ct. 1131, 200 L.E.2d 729 (2018), support the contrary conclusion.
In Wood , we struck both the CCP and avoid arrest aggravating factors, which were two of the three aggravators found by the trial court and to which it assigned "great weight." Id. at 1233. In ultimately determining that the error in Wood was not harmless, we emphasized:
In this case the jury was instructed on both aggravating factors that we have determined were not supported by competent, substantial evidence. This alone would require a finding that the error was not harmless beyond a reasonable doubt. We note that our conclusion in this regard is also consistent with our pre- Hurst precedent in Kaczmar v. State , 104 So.3d 990, 1008 (Fla. 2012), where we held that, upon striking the CCP and felony-murder aggravating factors so that only one valid aggravating factor remained , such error was not harmless beyond a reasonable doubt. Post- Hurst , this conclusion is even more compelling.
... [T]he jury would have had to make these factual determinations that the sole valid aggravating factor -that the capital felony was committed while Wood was engaged, or was an accomplice in the commission of a burglary and or robbery-outweighed the mitigating circumstances established. "[W]e are not so sanguine as to conclude that [Wood's] jury ... would have found [this sole aggravating factor ] sufficient to impose death and that [this sole aggravating factor ] outweighed the mitigation."
Id. at 1234 (alterations in original) (emphasis added) (quoting Hurst , 202 So.3d at 68 ). In determining that the error was harmful, we repeatedly emphasized that our conclusion was influenced by the fact that two of the three aggravators presented were stricken, leaving only one valid aggravating factor for the jury to properly consider. Thus the harmless error analysis in Wood was based on the Court's determination that the remaining sole valid aggravating factor was not sufficient to support the sentence of death.[3]
*214 Wood is distinguishable from Hall's case for numerous reasons. Firstly, even after striking the CCP aggravator, Hall had four valid remaining aggravators, all of which were afforded either "great weight" or "very great weight,"[4] as opposed to the one remaining aggravator found in Wood . Secondly, three of the remaining aggravators found in Hall's case (i.e., under sentence of imprisonment, previously convicted of another violent felony, and the victim was a law enforcement officer) were without dispute. Thus as we stated in our harmless error analysis in Hall II ,
Presuming that the jury did its job as instructed by the trial court, we are convinced that it would have still found the aggravators greatly outweighed the mitigators in this case. Indeed, it is inconceivable that a jury would not have found the aggravation in Hall's case unanimously, especially given the fact that three of the aggravators found were automatic ....
212 So.3d at 1035. It is also worth noting that this Court, in conducting its harmless error analysis in Hall II , did not include the invalidated CCP aggravator in its analysis. Id. Instead, we found that the Hurst error, as it related to Hall's case, was harmless, even without the stricken CCP aggravator. Id. Thus we conclude that Wood is distinguishable from Hall's case.
Two other cases recently decided by our Court, Middleton and Cozzie , also lend support to the postconviction court's denial of this subclaim of Hall's successive postconviction motion.
Middleton involved a unanimous jury recommendation of death, where this Court ultimately struck the avoid arrest and CCP aggravators. 220 So.3d at 1172. There, we explained:
"When this Court strikes an aggravating factor on appeal, 'the harmless error test is applied to determine whether there is no reasonable possibility that the error affected the sentence.' " Williams v. State , 967 So.2d 735, 765 (Fla. 2007) (quoting Jennings v. State , 782 So.2d 853, 863 n.9 (Fla. 2001) ); see also Diaz v. State , 860 So.2d 960, 968 (Fla. 2003) ("We find this error harmless, however, after consideration of the two remaining aggravating circumstances and the five mitigating circumstances in this case."). Despite striking the avoid arrest and CCP aggravators, two valid aggravators remain in this unanimous death-recommendation case. The two aggravators which remain are that the murder was especially heinous, atrocious, or cruel (HAC) and that is was committed during the commission of a burglary and for pecuniary gain, which were each given "great weight" by the trial court.
Id. In finding that the error in Middleton was harmless, we noted that there was no statutory mitigation and that "the trial court expressly stated that any of the considered aggravating circumstances found in this case, standing alone, would be sufficient *215 to outweigh the mitigation in total presented." Id.[5] Thus because there was no reasonable possibility that the erroneous aggravators contributed to Middleton's sentence, we ultimately concluded that any errors there were harmless. Id.
Hall's case is similar to Middleton because significant aggravation remained, even without the stricken CCP aggravator, that "far outweighed the mitigation." Hall I , 107 So.3d at 271. Furthermore, three of the remaining aggravators present in Hall are without and beyond dispute. The fourth aggravator that remains, HAC, is one of the weightiest in Florida, see Jackson v. State , 18 So.3d 1016, 1035 (Fla. 2009), and was afforded "very great weight" by the trial court. Thus we conclude, as we have previously in Hall's initial postconviction case, that any error in Hall's case, like the errors in Middleton , was harmless. See Hall II , 212 So.3d at 1035-36 (finding any Hurst error harmless).
Similarly, in Cozzie , we determined that "[e]ven if the avoid arrest aggravator were stricken ... the unanimous death recommendation would still remain, along with the aggravators of CCP, HAC, and in the course of a felony, which are among the weightiest aggravators in our capital sentencing scheme." 225 So.3d at 729. Furthermore, the remaining aggravators in Cozzie were afforded "great weight" by the trial court. Id.[6] Thus we ultimately determined that "any possible error was harmless because there was not a reasonable possibility that [Cozzie] would have received a life sentence without the trial court finding of the [avoid arrest] aggravator." Id. (alterations in original) (quoting Aguirre-Jarquin v. State , 9 So.3d 593, 608 (Fla. 2009) ).
Hall has significant and weighty aggravation beyond the invalidated CCP aggravator. Further, the trial court in both Cozzie and here concluded that the aggravating circumstances "far outweigh[ed]" the mitigating circumstances. Id. at 725 ; see Hall I , 107 So.3d at 271. Thus we conclude that Cozzie is factually similar to Hall's case.
Both Hall and the dissent attempt to conflate nonbinding, dissenting opinions with our binding post- Hurst death penalty precedent. However, as discussed above, our binding precedent dictates our conclusion that Hall's stricken CCP aggravator is harmless beyond a reasonable doubt.
We deny this subclaim of Hall's successive postconviction motion.
Mental Health Mitigation Presentation
We deny this subclaim in the successive postconviction motion because this Court has already heard and addressed the mental health mitigation in Hall's initial postconviction motion. Thus this claim is procedurally barred. In addition, even when considered on the merits, we conclude that this subclaim fails.
In his initial postconviction motion, Hall extensively asserted the claim that trial counsel was ineffective for not presenting mental health mitigation to the jury. Similarly, in our opinion on Hall's initial postconviction motion, we addressed the issue and determined that the trial court's ruling on counsel's strategy was supported by *216 competent, substantial evidence. Hall II , 212 So.3d at 1027-29. Thus we conclude that this subclaim is procedurally barred, as it was raised and denied on Hall's previous postconviction motion. See Hunter v. State , 29 So.3d 256, 267 (Fla. 2008).
Nevertheless, we also conclude that the subclaim should be denied on the merits. Primarily, under Hurst harmless error, this Court must look to the potential effect on the trier-of-fact, not on the potential effect on trial counsel's trial strategy. Hurst , 202 So.3d at 68-69. Additionally, we have previously held that trial counsel is not required to anticipate changes in the law to provide effective legal representation. See Lebron v. State , 135 So.3d 1040, 1054 (Fla. 2014) ("This Court has 'consistently held that trial counsel cannot be held ineffective for failing to anticipate changes in the law.' " (quoting Cherry v. State , 781 So.2d 1040, 1053 (Fla. 2000) ) ). Furthermore, under Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), claims of ineffective assistance of counsel are assessed under the law in effect at the time of the trial. Id. at 689, 104 S.Ct. 2052. Thus we conclude that Hall's subclaim also fails on the merits.
Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985) .
We deny this subclaim of Hall's successive postconviction motion because it fails on the merits. We have repeatedly rejected Caldwell challenges to the advisory standard jury instructions in the past. See, e.g. , Rigterink v. State , 66 So.3d 866, 897 (Fla. 2011) ; Globe v. State , 877 So.2d 663, 673-74 (Fla. 2004) ; Card v. State , 803 So.2d 613, 628 (Fla. 2001) ; Sireci v. State , 773 So.2d 34, 40 nn.9 & 11 (Fla. 2000) ; Teffeteller v. Dugger , 734 So.2d 1009, 1026 (Fla. 1999) ; Brown v. State , 721 So.2d 274, 283 (Fla. 1998) ; Burns v. State , 699 So.2d 646, 655 (Fla. 1997) ; Johnson v. State , 660 So.2d 637, 647 (Fla. 1995). Additionally, as discussed in detail in our recent opinion in Reynolds v. State , No. SC17-793, --- So.3d ----, 2018 WL 1633075 (Fla. Apr. 5, 2018) (plurality opinion), we have now expressly rejected these post-Hurst Caldwell claims. See also Franklin v. State , 43 Fla. L. Weekly S86, 236 So.3d 989 (Feb. 15, 2018). Thus we deny relief on this subclaim of Hall's successive postconviction motion.
Hall's Sentence Violates Due Process
We deny this subclaim of Hall's successive postconviction motion because we have already addressed a Hurst harmless error analysis as it pertains to Hall's case in Hall II, 212 So.3d at 1033-36. Thus this subclaim is duplicative.
Furthermore, the authority upon which Hall relies in support of his argument, In re Winship , 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), is not determinative. The United States Supreme Court, in In re Winship , held that the State must prove all elements of a crime in a juvenile delinquency proceeding beyond a reasonable doubt, just as it would in an adult criminal proceeding, and that the failure to do so would result in a due process violation. 397 U.S. at 367-68, 90 S.Ct. 1068. We conclude that In re Winship is distinguishable from Hall's case, however, because Hall's case does not concern a juvenile delinquency proceeding. Moreover, although Hurst did result in the requirement that all aggravators and mitigators be proven beyond a reasonable doubt, as we previously stated in Hall II , the error in Hall's case was harmless. See 212 So.3d at 1033-36 (discussing how the error was harmless due to Hall's unanimous death sentence). Thus we conclude that Hall's death sentence does not violate due process and thus hold that this subclaim is meritless.
*217 Hall's Death Sentence Violates the Eighth Amendment
We deny this claim of Hall's successive postconviction motion because there was no harmful error in this case. Hall II , 212 So.3d at 1036. In Hurst , we held that unanimity is required under the Eighth Amendment. Similarly, we have determined that defendants whose sentences became final post-Ring and who received unanimous jury recommendations are not entitled to Hurst relief if the error is deemed to be harmless pursuant to Davis v. State , 207 So.3d 142, 173-75 (Fla. 2016). Hall's jury returned a unanimous recommendation, Hall I , 107 So.3d at 270, his sentence became final after Ring , see Hall v. Florida , 571 U.S. 878, 134 S.Ct. 203, 187 L.Ed.2d 137, and the Hurst error was harmless. Therefore, we deny this claim of Hall's successive postconviction motion.
Hall's Indictment
Finally, Hall's argument with regard to his indictment also fails. Hall argues that he was denied his right to a proper indictment because the grand jury indictment in his case did not list the aggravators. However, "this Court has repeatedly rejected the argument that aggravating circumstances must be alleged in the indictment." Pham v. State , 70 So.3d 485, 496 (Fla. 2011) (citing Rogers v. State , 957 So.2d 538, 554 (Fla. 2007) ; Coday v. State , 946 So.2d 988, 1006 (Fla. 2006) ; Ibar v. State , 938 So.2d 451, 473 (Fla. 2006) ; Blackwelder v. State , 851 So.2d 650, 654 (Fla. 2003) ; Kormondy v. State , 845 So.2d 41, 54 (Fla. 2003) ). Nothing in Hurst indicates that our holding impacted this settled point of law; and we have also held prior to Hurst that "neither Apprendi nor Ring requires that aggravating circumstances be charged in the indictment." Rogers , 957 So.2d at 554. Therefore, Hall's indictment claim fails.
CONCLUSION
For the reasons set forth above, we affirm the postconviction court's order denying Hall relief on his successive motion for postconviction relief.
It is so ordered.
LABARGA, C.J., and LEWIS and LAWSON, JJ., concur.
CANADY and POLSTON, JJ., concur in result.
PARIENTE, J., dissents with an opinion, in which QUINCE, J., concurs.

As we stated in Hall I ,
In the trial court's Sentencing Order, the court found five aggravators: (1) previously convicted of a felony and under sentence of imprisonment-great weight; (2) previously convicted of another capital felony or of a felony involving the use or threat of violence to the person-great weight; (3) committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws-great weight; (4) especially heinous, atrocious or cruel [ (HAC) ]-very great weight; (5) cold, calculated, and premeditated [ (CCP) ]-very great weight; (6) the victim of the capital felony was a law enforcement officer engaged in the performance of his or her official duties-no weight-merged with aggravator number 3 as listed above. In mitigation, the sentencing court found no statutory mitigators and eight non-statutory mitigating circumstances: (1) Hall was a good son and brother-some weight; (2) Hall's family loves him-little weight; (3) Hall was a good athlete who won awards and medals-little weight; (4) Hall was a victim of sexual abuse-some weight; (5) Hall was productively employed while in prison-some weight; (6) Hall cooperated with law enforcement-some weight; (7) Hall showed remorse-little weight; and (8) Hall displayed appropriate courtroom behavior-little weight. The trial court concluded that the aggravating circumstances far outweighed the mitigation and gave great weight to the jury's unanimous recommendation of death. Thus, the trial court imposed the sentence of death.
Hall I , 107 So.3d at 270-71.

We did, however, find that the trial court's finding of the CCP aggravator was not supported by competent, substantial evidence, and thus it was stricken. Hall I , 107 So.3d at 278-79.

Ultimately, in Wood , we did not order a new penalty phase because we determined that Wood's death sentence was a disproportionate punishment when the aggravators were stricken. 209 So.3d at 1234.

"(1) [P]reviously convicted of a felony and under sentence of imprisonment-great weight; (2) previously convicted of another capital felony or of a felony involving the use or threat of violence to the person-great weight; (3) committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws-great weight; (4) especially heinous, atrocious or cruel-very great weight; [and] (5) ... the victim of the capital felony was a law enforcement officer engaged in the performance of his or her official duties-no weight-merged with aggravator number 3 as listed above." Hall I , 107 So.3d at 270-71.

The trial court in Middleton found eleven nonstatutory mitigators, all of which were afforded "some weight" or "little weight." 220 So.3d at 1173.

The trial court found one statutory mitigator and twenty-five nonstatutory mitigators in Cozzie . Ultimately, the trial court, in weighing the aggravation and mitigation in Cozzie , concluded that the aggravators "far outweighed" the mitigators in sentencing Cozzie to death. 225 So.3d at 726.