# Supreme Court of Florida

_____

No. SC19-211
_____

**HECTOR SANCHEZ-TORRES,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

_____

No. SC19-836
_____

**HECTOR SANCHEZ-TORRES,**
Petitioner,

vs.

**MARK S. INCH, etc.,**
Respondent.

March 12, 2020

PER CURIAM.

Hector G. Sanchez-Torres challenges an order denying in part and

dismissing in part his third amended motion to vacate judgments of conviction and

sentence of death, filed under Florida Rule of Criminal Procedure 3.851. He also

petitions this Court for a writ of habeas corpus.  We have jurisdiction.  *See* art. V, §

3(b)(1), (9), Fla. Const.  For the reasons set forth below, we affirm the denial of

postconviction relief, and we deny Sanchez-Torres's petition for habeas relief.

## FACTS AND PROCEDURAL BACKGROUND

On direct appeal, we summarized the facts of the investigation that led to

Sanchez-Torres's armed robbery and first-degree murder charges:

> On the evening of September 9, 2008, Erick Joel Colon had been at a friend's house playing board games and left at 11 p.m. to walk home.  He had his cell phone with him at the time, as well as a wallet with cash in it.

> Colon's body was discovered lying on the sidewalk close to his home in the early morning hours of September 10, at 1:30 a.m.  The area was very dark.  When Colon's body was discovered, his wallet and cell phone were missing.

> Colon had been shot once in the head, but had no other injuries.  The medical examiner testified that the characteristics of the gunshot wound indicated that the muzzle of the gun was in direct contact with, and pressed hard against, the skin.  The entrance wound was just below the left eye, and the exit wound was on the right back side of the head.

> On September 30, 2008, Colon's mother testified that she received a phone call from her son's number.  When she answered, a young Hispanic woman was on the other end.  Colon's mother began crying and told the caller that the cell phone belonged to her murdered son.  The caller hung up.

> Sanchez-Torres's younger sister, who was fifteen years old at the time of the crime, testified during the penalty phase that she had discovered the cell phone and recognized that it was not one of her brother's cell phones.  She found a contact listing for "mom" and called it.  A woman answered.  She was crying and explained that the

cell phone belonged to her murdered son. Sanchez-Torres's sister then hung up and called her mother, who told her to turn off the phone and wait for her to come home. Sanchez-Torres's sister also called Markeil Thomas, the codefendant in this case and Sanchez-Torres's good friend and roommate, who told her to turn off the phone and pull out the battery, which she did. She gave the phone to Thomas, and her mother got it from him.

Detective Sharman with the Clay County Sheriff's Office spoke with Sanchez-Torres's mother, Maria Torres, on October 1, 2008. Torres stated that she had found the phone and that her daughter had used the phone to call someone who said the phone belonged to her son. Torres stated that she had taken the phone from her daughter and had thrown it in the trash. At some point later, Torres told law enforcement that she had given the cell phone to someone who had destroyed it. The Clay County Sheriff's Office was then able to locate pieces of the phone.

On October 2, Detective Sharman visited Sanchez-Torres in the Duval County Jail to question him about the phone. Sanchez-Torres stated that Thomas had bought the phone from an acquaintance known as "D." When informed that the phone belonged to a murder victim, Sanchez-Torres denied having anything to do with the murder. The Clay County Sheriff's Office was able to identify and locate "D," who denied ever selling or giving Sanchez-Torres or Thomas a phone.

Detective West, also with the Clay County Sheriff's Office, testified that he spoke with Torres on March 5, 2009, when he interviewed her at her home. When he met with her, he informed her that he had drafted an arrest warrant for her for tampering with the cell phone and showed her an unsigned arrest warrant. Torres testified that the next day, she told Sanchez-Torres about what happened, and he told her to contact the detectives and tell them to come see him.

After Detective West received a phone call from Torres, in which she stated that Sanchez-Torres wanted to speak to him, Detective West proceeded to the Duval County Jail to interview Sanchez-Torres. During the initial part of the interview, Sanchez-Torres stated that Thomas had shot the victim and drew a diagram of

- 3 -

the scene and the body to describe what happened. Detective West left the room, and Sanchez-Torres wrote out a three-page handwritten statement, in which he stated that he, and not Thomas, had shot the victim. Detective West returned to the room and took Sanchez-Torres to a different location in order to conduct a videotaped interview. Sanchez-Torres then told Detective West again that Thomas was the shooter.

*Sanchez-Torres v. State*, 130 So. 3d 661, 664-65 (Fla. 2013).

Sanchez-Torres pled guilty to the armed robbery and first-degree murder of Erick Colon and waived his right to a penalty phase jury. *Id.* at 664. The trial court found the existence of two aggravating factors: "(1) prior violent felony (great weight); and (2) commission during the course of a robbery (merged with pecuniary gain) (great weight)." *Id.* The prior violent felony aggravator was based on Sanchez-Torres being convicted of another murder that occurred less than two months before he killed Mr. Colon. *Id.* at 675. The trial court also found the existence of twenty-two nonstatutory mitigating circumstances and assigned "slight," "little," or "some" weight to each. *Id.* at 667-68. The court determined that the aggravating circumstances outweighed the mitigating circumstances and sentenced Sanchez-Torres to death. *Id.* at 668.

On direct appeal, we affirmed the convictions and death sentence, holding that Sanchez-Torres's guilty plea was knowing, intelligent, and voluntary, and that his death sentence was proportional. *Id.* at 673, 676. Sanchez-Torres filed a

motion to vacate his judgments of conviction and sentence.[1]  Following an

evidentiary hearing on Sanchez-Torres's third amended motion, the postconviction

court entered an order denying some of his claims and dismissing the others.[2]

Sanchez-Torres now argues that the court erred in denying three of his

ineffective assistance of counsel claims—that defense counsel: (1) misadvised him

to enter a guilty plea; (2) misadvised him to waive his right to a penalty phase jury,

and (3) failed to file a motion to suppress his confession.  Sanchez-Torres also

---

1.  Sanchez-Torres's motion raised the following ineffective assistance of counsel claims: (1) failure to investigate and present penalty phase witnesses to establish mitigating circumstances; (2) failure to investigate and present penalty phase testimony from a mental health expert to prove mitigating circumstances; (3) failure to ask that the penalty phase be held separately from the hearing held to comply with *Spencer v. State*, 615 So. 2d 688 (Fla. 1993); (4) failure to file a motion for continuance of trial; (5) failure to file a motion to suppress involuntary statements; and (6) failure to adequately prepare for trial and failure to advise Sanchez-Torres of his rights and the nature of the charges against him, resulting in a plea that was not knowing, intelligent, and voluntary.  In addition, Sanchez-Torres alleged: (7) newly discovered evidence based on *Hurst v. Florida*, 136 S. Ct. 616 (2016); (8) newly discovered testimony by a codefendant asserting that Sanchez-Torres was not the shooter; (9) Sanchez-Torres's death sentence is unconstitutional under *Hurst v. State*, 202 So. 3d 40 (Fla. 2016); (10) cumulative error in counsel's guilt and penalty phase performance; (11) Sanchez-Torres may be incompetent at the time of execution; and (12) lethal injection is cruel and unusual.

2.  The postconviction court also denied Sanchez-Torres's motion to vacate or withdraw his guilty plea and jury waiver, filed under Florida Rule of Criminal Procedure 3.170(l), and dismissed without prejudice a supplement to the motion that sought relief under *Hurst v. State*.

petitions this Court for a writ of habeas corpus, asserting that his charging document was constitutionally defective and that his appellate counsel failed to raise certain claims on direct appeal. We address each of these arguments in turn.

## ANALYSIS

### I. Sanchez-Torres's Denied Postconviction Claims

*A. Trial counsel's advice to plead guilty and waive a penalty phase jury*

Sanchez-Torres argues that the postconviction court erred in denying his claim that trial counsel misadvised him to plead guilty against his best interests to avoid going to a trial they were not prepared for. Sanchez-Torres also argues that his trial counsel provided ineffective assistance by advising him to waive his right to a penalty phase jury, a decision he insists had no possible benefit to him.

To the extent Sanchez-Torres is arguing that his plea was not knowing, intelligent, and voluntary, this claim is procedurally barred because the issue was already addressed on direct appeal. *See Freeman v. State*, 761 So. 2d 1055, 1067 (Fla. 2000) ("This issue was raised on direct appeal and cannot be relitigated under the guise of ineffective assistance of counsel."). However, in the direct appeal opinion, we refused to address Sanchez-Torres's assertions that he was misinformed about the consequences of a guilty plea, holding that such claims should be addressed in postconviction proceedings, where an evidentiary hearing could be held on the allegations. *Sanchez-Torres*, 130 So. 3d at 671, 673. We

- 6 -

address now the claim that trial counsel misadvised Sanchez-Torres due to lack of preparation.

To establish deficient performance such as to demonstrate ineffective assistance of counsel, "[t]he defendant must specifically identify acts or omissions of counsel that were manifestly outside the wide range of reasonably competent performance under prevailing professional norms." *Long v. State*, 183 So. 3d 342, 345 (Fla. 2016). The defendant has the burden to overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). When counsel offers a strategic explanation for the challenged conduct, "this Court will not second-guess counsel's strategic decisions on collateral attack." *Brown v. State*, 846 So. 2d 1114, 1125 (Fla. 2003).

The defendant must also establish prejudice, which, in the plea context, means that "a defendant must demonstrate 'a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial.' " *Long*, 183 So. 3d at 345 (quoting *Grosvenor v. State*, 874 So. 2d 1176, 1181 (Fla. 2004)). Because both deficient performance and prejudice present mixed questions of law and fact, "this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are

supported by competent, substantial evidence, but reviewing the circuit court's

legal conclusions de novo." *Johnston v. State*, 63 So. 3d 730, 737 (Fla. 2011).

In this case, after hearing the testimony at Sanchez-Torres's evidentiary

hearing, the postconviction court made the following findings in its order:

> Counsel had no basis to believe at the time that Defendant could not
> appreciate the circumstances and his options. Counsel advised
> Defendant to enter a guilty plea because it was in his best interests.
> Counsel believed a Clay County jury would absolutely convict
> Defendant of first-degree murder and give him death based on the
> facts of the case, and as a result counsel attempted to negotiate a plea
> deal with the State. The defense strategy was to plead guilty, try to
> use the polygraph and other pieces of evidence to convince the [trial
> court] that Defendant was not the shooter, rely on Defendant's asking
> for mercy, taking of responsibility, and remorse, and demonstrate that
> he was young, immature, a young father, loved by a lot of people, a
> great client, and respectful to convince the [trial court] that a death
> sentence was not appropriate. Counsel also considered the [trial
> court]'s override of a recommendation for death in the case of
> Kenneth McBride, which happened two weeks before Defendant
> entered his plea. The Court finds counsel's advice to enter the guilty
> plea reasonable and strategic.

These findings are supported by competent, substantial evidence. Sanchez-

Torres's trial counsel testified at the evidentiary hearing that the defense team was

prepared to go to trial but believed a guilty plea was in their client's best interest.

As far as sentencing preparation, it can hardly be argued that counsel was

unprepared for sentencing, considering counsel presented testimony from *forty-*

*four* witnesses at the penalty phase hearing, leading to a finding of nearly two-

dozen mitigating circumstances.

Counsel further explained that the defense team knew Sanchez-Torres was likely to be convicted and believed, from their experience with Clay County juries, that a jury was likely to make an adverse recommendation for the death penalty. Counsel believed that Sanchez-Torres had a better chance at getting a life sentence if there was no jury recommendation for death. Counsel testified that the strategy to plead guilty and to rely on mitigation factors, remorse, and polygraph results was explained to Sanchez-Torres, and that he understood his plea and knew a death sentence was still a possibility.

Because Sanchez-Torres did not show that counsel's advice was the result of misinformation or lack of preparation, we agree with the postconviction court that counsel's advice to plead guilty and waive the right to a penalty phase jury was a strategic decision—one we will not second-guess. *See Brown*, 846 So. 2d at 1126. We therefore affirm the postconviction court's denial of these claims.

*B. Trial counsel's failure to file a motion to suppress*

Sanchez-Torres argues that the postconviction court erred in denying his claim that defense counsel provided ineffective assistance by failing to file a motion to suppress Sanchez-Torres's confession. Sanchez-Torres insists that the trial court would have granted a motion to suppress because the investigating detectives coerced the confession by threatening to arrest Sanchez-Torres's mother and sister. We affirm, for the evidence presented at the evidentiary hearing does

- 9 -

not demonstrate that Sanchez-Torres's confession was involuntary and therefore does not establish that the court would have suppressed the confession.

We have repeatedly held that if a defendant does not demonstrate that a motion to suppress would have been successful and that the evidence in question would have been excluded, he cannot establish that he was prejudiced by a failure to file a motion to suppress. *See Lebron v. State*, 135 So. 3d 1040, 1053 (Fla. 2014). And even if a motion to suppress would have been granted, the defendant must show that there is a reasonable probability the result of the proceeding would have been different if not for counsel's error. *Abdool v. State*, 220 So. 3d 1106, 1112 (Fla. 2017) (holding that a failure to file a motion to suppress did not undermine confidence in the outcome because "[t]he evidence that Abdool committed first-degree murder is not limited to his statement to police or its alleged fruits"). Moreover, an attorney cannot be constitutionally deficient by failing to file a meritless motion. *Johnston v. State*, 63 So. 3d 730, 740 (Fla. 2011).

The test for whether a defendant's confession may be used as evidence against him "is one of voluntariness, or free will, which is to be determined by an examination of the totality of the circumstances surrounding the confession." *Owen v. State*, 862 So. 2d 687, 695 (Fla. 2003) (quoting *Traylor v. State*, 596 So. 2d 957, 964 (Fla. 1992)). A confession's admissibility "depends on (1) whether the interrogating officers engaged in coercive activity, and (2) whether that activity

was sufficient to overcome the free will of the defendant." *State v. Morrison*, 236 So. 3d 204, 215 (Fla. 2017) (quoting *Baker v. State*, 71 So. 3d 802, 814 (Fla. 2011)). It is not necessary that any direct promises or threats were made to the accused, but to establish that a statement was involuntary, there must be a finding of coercive police conduct. *Baker*, 71 So. 3d at 814.

Sanchez-Torres's mother (Ms. Torres) testified at the evidentiary hearing that detectives showed her an unsigned arrest warrant for evidence tampering and threatened to arrest her if Sanchez-Torres did not talk to them. She testified that she spoke to Sanchez-Torres the next day and told him about the purported threat. She testified that Sanchez-Torres then asked to meet with the detectives and ultimately confessed to Mr. Colon's murder.

Sanchez-Torres's sister (Ms. Sanchez) testified at the evidentiary hearing as well, stating that detectives questioned her about finding the victim's phone in Sanchez-Torres's room. But although Ms. Sanchez said she was shown unsigned arrest warrants, she testified that the detectives did *not* threaten to arrest her. The detectives also testified that Ms. Sanchez was never told she might be arrested.

Sanchez-Torres has not demonstrated that the detectives' conduct was improperly coercive. The detectives did not threaten or mistreat Sanchez-Torres during his requested interview, and although Sanchez-Torres mentioned during the interview that he did not want his mother getting in trouble, the detectives made no

offers or promises in exchange for his confession.  *See Blake v. State*, 972 So. 2d 839, 844 (Fla. 2007) ("Before finding the confession inadmissible, Florida courts have repeatedly required that the alleged promise 'induce,' be 'in return for,' or be a 'quid pro quo' for the confession.").  In fact, Detective West testified at the evidentiary hearing that he did not know if Sanchez-Torres even knew about the unsigned arrest warrants at the time he confessed to Mr. Colon's murder.

As to the detectives' conversations with Sanchez-Torres's family members, they did not tell Ms. Sanchez she might be arrested, and informing Ms. Torres she could be arrested for tampering with evidence was not a coercive means of extracting Sanchez-Torres's confession because the detectives did in fact have probable cause to arrest Ms. Torres.  *See Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001) ("Whether a threat to prosecute a third party was coercive depends upon whether the state had probable cause to believe that the third party had committed a crime at the time that the threat was made ….").  Prior to the conversation in question, the detectives learned that Ms. Torres had made efforts to destroy the victim's cell phone when she discovered that her daughter had found the phone in Sanchez-Torres's room.

Sanchez-Torres argues that the detectives committed felony extortion by threatening to arrest Ms. Torres, but extortion is to "maliciously threaten" someone for certain enumerated benefits, § 836.05, Fla. Stat. (2019), and Florida courts have

held that "maliciously" means "intentionally and without any lawful justification." *O'Flaherty-Lewis v. State*, 230 So. 3d 15, 18 (Fla. 4th DCA 2017) (citing *Dudley v. State*, 634 So. 2d 1093, 1094 (Fla. 2d DCA 1994)).  Law enforcement officers have a lawful justification for threatening to arrest individuals for violating the law.

Because the evidence presented at the evidentiary hearing fails to establish that Sanchez-Torres's confession was involuntary under the totality of the circumstances, we hold that a motion to suppress the confession would not have been granted.  Because defense counsel cannot be deficient for failing to file a meritless motion, and because no prejudice can result from failure to file a motion that would not have been successful, we affirm the postconviction court's denial of this ineffective assistance of counsel claim.

## II.     Sanchez-Torres's Petition for Habeas Relief

Sanchez-Torres petitions this Court for a writ of habeas corpus, asserting ineffective assistance of appellate counsel.  Sanchez-Torres's first claim is that his appellate counsel was ineffective by failing to argue on direct appeal that the State impermissibly sought the death penalty when the grand jury had only made findings as to first-degree murder, but had not made findings as to any aggravating circumstances for death penalty eligibility.[3]  Sanchez-Torres argues that Florida

---

3. To the extent Sanchez-Torres is arguing that his charging instrument was fundamentally defective, we have repeatedly rejected claims arguing that a charging instrument must list aggravators that render eligibility for death.  *See,*

has demonstrated a continued practice of divesting grand juries of their important functions and that "[o]ur state's current protocol" is improper, and he insists that Florida courts have shown a "disrespect for citizen jurors."[4]

Despite the myriad assertions and arguments Sanchez-Torres raises regarding the purpose and authority of a grand jury, with cited authority ranging from Mendeleev's work on the Periodic Table to Elizabeth Seager's conviction for witchcraft in 1662, the issue before us is actually a simple one. Sanchez-Torres argues that his appellate counsel provided ineffective assistance by failing to argue on direct appeal that a grand jury must make certain findings before the State can seek the death penalty. The flaw in Sanchez-Torres's argument is equally straightforward: "The failure to present a novel legal argument not established as meritorious in the jurisdiction of the court to whom one is arguing is simply not ineffectiveness of legal counsel." *Steinhorst v. Wainwright*, 477 So. 2d 537, 540

---

e.g., *Hall v. State*, 246 So. 3d 210, 217 (Fla. 2018); *Pham v. State*, 70 So. 3d 485, 496 (Fla. 2011); *Rogers v. State*, 957 So. 2d 538, 554 (Fla. 2007) ("Neither *Apprendi* nor *Ring* requires that aggravating circumstances be charged in the indictment."). Sanchez-Torres insists, however, that the problem is not necessarily with the charging document, but with prosecutors being allowed to seek the death penalty without a grand jury finding proof of a death-eligible offense.

4. Notably, these arguments could be construed as jurors' rights claims. In fact, the petition states that "both the accused and the citizens making up the grand jury have rights at stake here that have been, and continue to be, stripped away from them by the legislature with the consent of the courts." Sanchez-Torres argues, however, that he should have "the right to assert the third-party interests of jurors and by extension – grand jurors."

(Fla. 1985); *see also State v. Murray*, 262 So. 3d 26, 46 (Fla. 2018) (holding that appellate counsel was not deficient for failing to make a novel prosecutorial misconduct claim on direct appeal); *Thomas v. State*, 421 So. 2d 160, 165 (Fla. 1982) (holding that counsel "need not be expected to anticipate developments in the law which make possible the raising of novel issues").

Sanchez-Torres's collateral counsel acknowledges that in Florida, neither the legislature nor the courts have ever declared that the issues raised in this claim constitute fundamental error or a deprivation of a defendant's constitutional rights. Because these novel arguments have never been established as meritorious, appellate counsel was not ineffective for failing to raise them on direct appeal.

Sanchez-Torres next argues that his appellate counsel was ineffective by failing to argue on direct appeal that the trial court was bound to consider Sanchez-Torres's sentencing with a "presumption of life"—an espoused variant on the presumption of innocence. Included in the petition is a hypothetical presumption-of-life instruction, which the petition describes as "an amalgam of Standard Instruction 2.1 and Standard Instruction 3.7 and adjusted to reflect the issues in the sentencing phase." The petition argues that appellate counsel failed to argue this proposed instruction "or one similar to it" on direct appeal.

However, Sanchez-Torres's collateral counsel expressly acknowledges that "[t]he issue of a jury instruction on the presumption of life does not appear to have

- 15 -

been litigated in Florida." Accordingly, as with Sanchez-Torres's previous habeas claim, we hold that appellate counsel was not ineffective for failing to raise a novel argument on direct appeal. *See Steinhorst*, 477 So. 2d at 540.

Finally, Sanchez-Torres argues that appellate counsel was ineffective by failing to argue fundamental errors on direct appeal regarding Sanchez-Torres's guilty plea and jury waiver. The habeas petition cites portions of the plea hearing, arguing that Sanchez-Torres's guilty plea was not intelligent or knowing because he believed his attorneys would aggressively argue that he was not the shooter.

This claim is meritless, for appellate counsel did in fact argue on direct appeal that Sanchez-Torres's plea was involuntary; counsel even argued that the plea was not intelligent and knowing on the grounds that Sanchez-Torres allegedly misunderstood what the State had to prove. *Sanchez-Torres*, 130 So. 3d at 670-73.

As to whether appellate counsel should have argued on direct appeal that Sanchez-Torres's plea was involuntary because trial counsel never explained the consequences of a jury waiver, this claim is essentially asserting that on direct appeal, appellate counsel failed to argue ineffective assistance of trial counsel. But "[a]ppellate counsel may raise a claim of ineffective assistance of trial counsel only where the ineffectiveness is apparent on the face of the record," *Stewart v. Crosby*, 880 So. 2d 529, 531 (Fla. 2004), and it is not apparent from the face of the record that trial counsel never informed Sanchez-Torres of the consequences of a

jury waiver. Because this ineffective assistance of trial counsel claim would have failed on direct appeal, appellate counsel was not ineffective for failing to raise the claim. *See Murray*, 262 So. 3d at 46 ("Appellate counsel cannot be deemed ineffective for failing to raise a meritless issue.").

## CONCLUSION

For the reasons set forth above, we affirm the postconviction court's order denying in part and dismissing in part Sanchez-Torres's third amended postconviction motion, and we deny Sanchez-Torres's petition for a writ of habeas corpus.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Clay County,
    John H. Skinner, Judge - Case No. 102009CF000671000AMX

Robert S. Friedman, Capital Collateral Regional Counsel, Robert R. Berry and Karin L. Moore, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida,

    for Appellant/Petitioner

Ashley Moody, Attorney General, and Michael T. Kennett, Assistant Attorney General, Tallahassee, Florida,

    for Appellee/Respondent